[L. A. No. 18614.   In Bank.   July 14, 1943.]

GUARANTEE INSURANCE COMPANY LIMITED MU-
TUAL (a Corporation), Petitioner, v. INDUSTRIAL
ACCIDENT COMMISSION, RUBY HAVENER et al.,
Respondents.

J. L. Kearney and Herbert S. McCartney, Jr., for Petitioner.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

SHENK, J.—The petitioner, the Guarantee Insurance Company, seeks the annulment of an award of the Industrial Accident Commission holding it as the insurance carrier of Al Novak as general employer, and Mrs. Bessie Novak as special employer, of Lowell Havener, deceased.

Mrs. Bessie Novak and her son, Al Novak, were engaged in the junk business. Mrs. Novak's establishment, the Gate City Junk Company, was located at San Bernardino, while her son operated a similar but much smaller business, the Gate City Wrecking Company, in Ontario. Mrs. Novak heard of an auction in Sacramento and requested her son to attend it and buy pipe for her. This he did, paying part of the

purchase price in cash furnished by his mother, and the remainder by a trade acceptance on which Mrs. Novak was obligor. Mr. Novak then telephoned his mother in San Bernardino to send her men after the material. She stated that she had no truck available at the time and requested him to send his own trucks. He objected to the use of his trucks on a haul of that length, as he did not then have workmen's compensation insurance. She replied that she had compensation insurance saying, ''I can take care of that from this end.'' In the same conversation Mrs. Novak asked Al why he did not have compensation insurance. He informed her that he was short of money, whereupon she assured him that she would lend him the necessary funds and that she would immediately call her insurance agent and request a policy covering his business. This she did on October 14, 1941, paying $195 on account of the premium to Mr. Carroll Strachota, the same agent who had procured the policy issued by the petitioner on Mrs. Novak's business.

Following the conversation with his mother, Mr. Novak called his manager, a Mr. Renek, in Ontario, asking him to send two men with a truck to transport the material purchased for his mother. The men were to take the material to Ontario where Mr. Renek would give further directions. Mr. Novak instructed Mr. Renek to keep time commencing when the men left until they returned so that it could be charged to his mother's business.

On October 16, 1941, while Mike Williams and Lowell Havener were hauling the pipe from Sacramento to Ontario, an accident occurred which resulted in the death of Lowell Havener.

Mr. Strachota, the insurance agent, wrote to the petitioner on October 17, 1941, requesting an insurance policy on Mr. Novak's business, to be dated back to October 14, the day on which he had received the premium. The company refused to write the policy and it has never been issued.

The petitioner attacks the finding of the commission that Mrs. Novak was a special employer, contending that Mr. Novak was the sole employer of the deceased; and urges that there is no evidence to support the finding that petitioner is the insurance carrier of Mr. Novak since no policy had been issued prior to the accident.

The petitioner contends that the test in determining special employment is not met by the facts of this case. Mr. Campbell in his work on compensation (Workmen's Compensation, vol.

1, sec. 454) states: "The real test of what constitutes special employment lies in the character of the control and supervision exercised by the alleged special employer over the work and the employee engaged in its performance. It must appear, either by the terms of the contract or during the course of its performance, that the employee of the general employer came under the direction and control of the other party to the contract and suffered injury as the result of such direction and control. The right to or the actual exertion of control must exist. The alleged employer must be in control of the work so that he can at any time stop or continue it and determine the way in which it shall be done, not merely in reference to the result to be reached but as to the method of reaching the result."

The petitioner insists that the evidence definitely establishes that the employees did not come under the direction or control of Mrs. Novak; that it does not appear that she was in control of the work nor that she could at any time stop or continue it or determine the manner in which it should be done; that her only interest was in the final result; that Mr. Novak retained the right of control and directly and through his manager exerted the physical control which identified him as the employer. It is true, as petitioner states, that all of the actual contacts with the employees were made by Mr. Novak, and that he attended to the details of getting the pipe loaded, and delivered instructions to the men. These facts, of course, are not inconsistent with the holding that he acted as general employer, but the petitioner urges that they are inconsistent with the holding of Mrs. Novak as special employer since they preclude the exercise of control or supervision on her part. It is noted that Mr. Campbell states that the *right to control* or the actual exertion of control must exist to constitute the relation of special employment. If Mrs. Novak had the right to exercise control by the terms of her agreement it would be immaterial whether she actually exercised the control. (*Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 P. 820]; *Claremont C. Club* v. *Industrial Acc. Com.*, 174 Cal. 395 [163 P. 209, L.R.A. 1918 F 177].) Evidence of direction and control are often important factors in determining the factual question of what the understanding between the parties really was.

There was no written agreement between Mr. Novak and his mother. The terms of the agreement must be derived

from their testimony before the commission. Their testimony, if believed, makes it clear that Mr. Novak had no interest in the transaction other than accommodating his mother. At some inconvenience to himself he made the trip to Sacramento, acted as her agent at the auction, and then consented that his truck and men be used for the procurement of the material purchased on her behalf. He satisfied himself that his mother was to pay the men. He instructed his manager that this transaction was to be charged against his mother's business. The petitioner contends that Mr. Novak in fact paid wages to Mike Williams and to Lowell Havener's widow after the accident, but there is no contradiction of Mr. Novak's testimony that the money he gave them was in the nature of advancements to tide them over until all claims had been settled. Mrs. Novak testified that she was to put their names on her payroll, but because of the accident she did not do so, suspending all activities pending the hearing before the commission. ■ Petitioner lays some stress on the question of whose payroll was actually to carry the names of the employees, but that factor would not alone be determinative of the issue of special employment as it has been held that mere payment of wages is not sufficient to establish the relation of employer and employee. (*Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 P. 757].) ■ Petitioner points out that Mrs. Novak could not have interrupted or controlled the activities of the men after they had set out on their trip, and that they probably would not have recognized her authority had she been able to reach them. But neither could her son do so. (See *Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346 [110 P.2d 64] (1941).) From the terms of the understanding the commission could justifiably conclude that the mother had the right to issue instructions concerning the details of the transaction.

■ Whether the right to control this venture and to direct the manner in which it was to be carried out rested in Mrs. Novak or her son was a question of fact. The accounts of the transaction as related by Mr. Novak and his mother were essentially the same. We cannot say that there was no substantial evidence on this issue, nor was the commission bound to infer collusion from the fact that the witnesses were mother and son. On the contrary there was abundant evidence from which the commission could infer that the elements of a special and general employer relationship were present, some of which were (1) a loaned employee situation,

(2) a joint participation by the alleged general and special employers, (3) some power, not necessarily complete, of direction and control in each. (Campbell, Workmen's Compensation, vol. 1, sec. 457.) If the evidence before the commission was also subject to the inference that Mr. Novak acted as an independent contractor or as the sole employer, we are not permitted to say as a matter of law that the inference drawn by the commission is incorrect. (*George L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 598 [200 P. 17]; *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754].) We therefore find no error in the commission's conclusion that Mrs. Novak was the special employer and Mr. Novak the general employer of Lowell Havener.

We come now to the question of whether Mr. Novak was insured by the petitioner at the time of the accident. Mrs. Novak testified that on October 14, she called Mr. Strachota and arranged for workmen's compensation insurance for her son's business. She paid to Mr. Strachota the same amount toward the premium as she was accustomed to pay for her own business. This agent had on previous occasions written insurance for Mr. Novak. Mr. Strachota admitted that he stated to Mrs. Novak on the day when the premium was paid that her son "was covered." The accident happened October 16, and on October 17 Mr. Strachota wrote to the petitioner requesting that a policy dated back to October 14, be issued to Al Novak. This the company refused to do. Mr. Strachota stated that he had not immediately forwarded the premium upon its receipt by him, as there was certain additional information to be procured from Mr. Novak before the application could be completed. It was not until after the accident that he secured this information. From all the evidence offered at the hearing, Mr. Strachota appeared to be merely a soliciting agent, insofar as workmen's compensation insurance was concerned. He solicited such business for several insurance companies, sending all requests for policies in to the companies, and delivering the policies when issued. He wrote no policies of this kind in his own office and had no authority to write them for the petitioner.

The evidence fails to support a finding that a contract of insurance was completed between Mrs. Novak and the petitioner on behalf of her son, and the company cannot be held as his insurance carrier unless there is evidence of estoppel. The soliciting agent did not submit the application for the

policy until after the accident occurred. The application was promptly rejected by the company and it received no money on account thereof. There is no question of unreasonable delay on the part of the company. No evidence was produced to indicate that the company had done anything to hold Mr. Strachota out to the public as its agent with power to issue policies or otherwise bind the company. No element of estoppel is present. We must therefore conclude that the petitioner was not the insurance carrier of Al Novak at the time of the accident.

That part of the award is annulled which holds the petitioner as the insurance carrier of Al Novak. In other respects the award is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.