[L. A. No. 18724.   In Bank.   Nov. 23, 1943.]

NATIONAL AUTOMOBILE INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, FRANCES N. IVY et al., Respondents.

C. W. Bowers for Petitioners.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

SHENK, J.—This is a proceeding to review an award of the Industrial Accident Commission.

George Ivy met his death while employed to drive an oil truck and trailer which was sublet by Miller Oil Products to Pathfinder Petroleum Company. Ivy's widow and minor son applied for death benefits against both concerns. The commission found that both were employers, that both were subject to the Workmen's Compensation Act, and that they were jointly liable. An appropriate award was made in favor of the surviving dependents against Miller Oil Products as general employer, and Pathfinder Petroleum Company as special employer. The insurance carriers were held jointly liable for payment of the award and the employers were dismissed. National Automobile Insurance Company, carrier for Miller Oil Products, seeks to annul the order affecting its liability.

It is conceded that Ivy met his death in the course of his employment and from causes arising out of the employment; that his widow and minor son are entitled to any benefits awarded; and that Pathfinder Petroleum Company was an employer. The sole question presented is the sufficiency of the evidence to justify the finding and conclusion of the commission that Miller Oil Products was the general employer. If such evidence is in the record the conclusion that the petitioner is liable may not be disturbed. (Sec. 67(c), Workmen's Compensation Act; *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 704 [151 P. 398]; *F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313].)

The record shows the following: Miller Oil Products is a co-partnership, consisting of two Miller brothers, engaged in

the business of distributing oil products. It operates from Whittier, California. It owned some and leased other oil trucks which it used in its own business and also leased to others. Pathfinder Petroleum Company conducted an oil refinery in Los Angeles. It owned no trucks or other distributing system. On March 15, 1942, it entered into a written agreement with Miller Oil Products to lease from the latter certain oil trucks at stated rates per mile. Section 4 of the lease agreement provided: ''Lessee during the time Lessee shall use the leased equipment pursuant to the terms of this lease, shall have the sole and exclusive control and use of the said leased equipment to the same effect as if Lessee were the owner thereof. Lessee shall employ and pay the wages of the drivers of the said equipment. Lessee agrees to employ and to permit said equipment to be operated only by competent and careful drivers duly licensed as required by law, and that Lessee shall in connection with such employment of such drivers carry all necessary and required workmen's compensation insurance or other insurance and shall comply with all laws, rules and regulations relating to the employment of truck drivers.'' The lease was in effect on the dates hereinafter mentioned.

On May 9, 1942, Miller Oil Products received a request from the Pathfinder Company for the use of a certain large utility truck with a semi-trailer which Miller Oil Products had leased from another concern; and that a competent driver be sent with the truck. The decedent, George Ivy, who had applied to Miller Oil Products for work, was selected by one of the Millers as the driver of the truck. Mr. Miller directed another employee to accompany Ivy on his first trip with the utility truck and report his judgment on Ivy's ability to handle it. On May 11th Ivy made his first trip for the Pathfinder Company accompanied by the other driver who reported to Mr. Miller that in his judgment Ivy was competent to operate the truck. Ivy continued in charge of the truck, hauling products for the Pathfinder Company until May 13th, when he met with the accident that resulted in his death.

Under its lease agreement with the owner of the truck and trailer, Miller Oil Products was obligated to see that there was a competent driver in charge of the truck at all times. Mr. Miller told Ivy that ''before we would keep him on permanent on the truck we would send one of our drivers along with him for a trip.'' One of Miller's drivers was sent

with Ivy on his first trip "to see that he could properly operate the truck in the protection of our interest"; also to identify him at the Pathfinder refinery as a new man. The employee who accompanied Ivy was paid by Miller Oil Products. On the nights of May 11th and 12th, during the three days' operation by Ivy, the truck was kept at the Miller yard, having been driven there in the evening by Ivy, and dispatched from there in the morning. Ivy reported his daily delivery tickets to Miller Oil Products which in turn forwarded them to the Pathfinder Company. Miller Oil Products took the speedometer readings from the truck. Periodically a mileage and payroll report was made to Pathfinder Company by Miller Oil Products and the former drew separate checks, one to Miller Oil Products for the amount due for mileage, and individual checks to the drivers in the amounts shown on the payroll. The checks were forwarded to Miller Oil Products who distributed them.

It also appeared that Miller Oil Products had nine drivers operating trucks and that it used them interchangeably in its own operations and on trucks leased to others. While engaged in their employment some of those drivers, not including Ivy, wore shirts with the lettering "Miller Oil Products" inscribed on them. Miller Oil Products did not direct where the hauls were to be made for the Pathfinder Company. In some instances, however, Miller trucks were leased by the Pathfinder Company to haul products from the Miller premises to the Pathfinder refinery.

That the driver of the leased truck was subject to the direction of the Pathfinder Company as to the hauls to be made; that at the time of the accident Ivy was performing services for that company; that his wages were paid by it; and that under the lease the Pathfinder Company was to be considered the sole owner of the truck and the employer of the driver, are not to be deemed the exclusively controlling elements in determining liability to an employee subject to the Workmen's Compensation Act. In this case the presence of the factors named by the petitioner does not conclusively demonstrate that the Pathfinder Company had complete and unqualified control of the driver. On the contrary it is apparent that Miller Oil Products exercised such supervision and control that it could substitute another driver on the truck at any time it deemed it necessary or desirable in its own interest, and that it could discharge the driver of any truck whenever

it deemed him incompetent. The evidence supports the conclusion that Miller Oil Products retained the right to employ or discharge, and to exercise a measure of control over, the driver selected by it to operate the truck here involved. This control becomes more apparent because of the obligation and responsibility placed upon Miller Oil Products under its contract of lease with the owner of that truck.

■ It is the rule in this state that where both the general and the special employer exert some measure of control both are liable. (*Department of Water and Power* v. *Industrial Acc. Com.*, 220 Cal. 638 [32 P.2d 354].) ■ Indeed, it is only necessary that there be present the right to control, as distinguished from the exercise of the right. The rule is stated in Campbell, Workmen's Compensation (1935) volume I, page 408, section 453, as follows: ''Where the original or general employer sends the employee to do work for a third person, the latter remains the servant of the employer sending him, so long as the power of control is retained.'' Therefore it is not only the actual exercise of control, but the right or potential power of control which is important in determining the status of one as an employer. (*Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, 190 Cal. 97 [210 P. 628]; *Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 P. 820].) The recent case of *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516 [139 P.2d 905], recognized and applied the rule that the right to control, whether or not exercised, is determinative; that a general and special employer relationship is present if there exists in each some power, not necessarily complete, of direction and control, and that whether there is such power of control is a question of fact.

Numerous factors enter into a consideration of what constitutes the right to control. The retention of the power to hire and discharge will in some instances be sufficient to impose liability upon the original or general employer. (*Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 P. 273]; *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, supra; *Press Pub. Co.* v. *Industrial Acc. Com.*, supra; *Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346 [110 P.2d 64]; see also *Billig* v. *Southern Pacific Co.*, 189 Cal. 477 [209 P. 241].) ■ As stated in the Press Publishing Company case at pages 119-120, the power of the employer to terminate the employment at any time is a strong

circumstance tending to show the subservience of the employee, since it is incompatible with the full control of the work by another. In the Drillon case it was said that the power to discharge is a significant factor in fixing the status of employer; that the test is whether the right or authority to discharge existed and not whether the employer could have exercised it if the employee was physically out of reach. In *Billig* v. *Southern Pacific Co., supra,* it was determined to be the rule in this state that when a master hires out a servant to operate an instrumentality, together with the use of the instrumentality, he does not necessarily cease to be the employer of the servant where he has not relinquished the power to discharge him; that in such case the legal effect is that, though the hirer directs the servant where to go and what to do in the performance of the work, the servant remains in the general employment of the master in so far as concerns the manner and method of operating the instrumentality. It is true that in the Billig case the rule was applied for the purpose of placing the blame for negligence in the operation of the instrumentality. The liberal interpretation enjoined by the provisions of the Workmen's Compensation Act, however, requires that the same rule should apply to determine whether the original employer of the servant and the owner of the instrumentality is an employer subject to the provisions of the act. (*Employers' Liability Assur. Corp.* v. *Industrial Acc. Com., supra.*)

Although in the present case there was a provision in the lease that the lessee should employ the drivers of equipment leased by it, in actual practice the lessor reserved the right to hire and discharge the driver of this particular truck. In its own interest the lessor exhibited a special concern for and exercised a general supervision over the method of handling the truck, which apparently required special skill in operation. It was kept at the yard of the lessor at night and was dispatched from there in the morning. From the conduct of the parties it is obvious that section 4 of the lease was intended to allocate, as between the lessor and lessee, responsibility under the Workmen's Compensation Act, and liability for negligence of the driver toward third persons under the doctrine of *respondeat superior.*

In determining the right to death benefits under the act it is immaterial that the parties to the lease had entered into an agreement that the one or the other should be solely

liable. (See *Hartford Accident & Indemnity Co.* v. *Industrial Acc. Com.,* 8 Cal.2d 589 [67 P.2d 105].) Such an agreement may not affect the claimants' rights under the act to proceed against either or both the general and special employer. (*American Motorists Ins. Co.* v. *Industrial Acc. Com.,* 8 Cal.2d 585 [67 P.2d 103]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com., supra; Famous Players etc. Corp.* v. *Industrial Acc. Com.,* 194 Cal. 134 [228 P. 5, 34 A.L.R. 765]; *Diamond Drill Contracting Co.* v. *Industrial Acc. Com.,* 199 Cal. 694 [260 P. 862].)

It follows that the commission did not exceed its powers in determining that Miller Oil Products was the general employer of George Ivy at the time involved, and in holding the petitioner liable for the payment of the award to his dependents.

The award is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Petitioners' application for a rehearing was denied December 20, 1943.