[L. A. No. 19149. In Bank. Mar. 9, 1945.]

INDUSTRIAL INDEMNITY EXCHANGE (an Inter-insurance Exchange), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JOHN CAMPELLONE et al., Respondents.

Herlihy & Herlihy for Petitioner.

Everett A. Corten, R. C. McKellips and Fred G. Goldsworthy for Respondents.

GIBSON, C. J.—Respondent Industrial Accident Commission made an award of compensation in favor of John Campellone against petitioner, the workmen's compensation insurance carrier for J. S. Metzger & Son, Inc., and against the Gagnon Co., Inc., jointly and severally. The award followed findings by the commission that Campellone sustained personal inju-

ries arising out of and occurring in the course of his employment as a truck driver by the Gagnon Company, as general employer, and by Metzger & Son, as special employer, and that the Gagnon Company was uninsured while Metzger & Son was insured by petitioner on the date of said injuries. By this proceeding, petitioner seeks to annul the award against it. No question is here raised, however, as to the validity of the award against the Gagnon Company.

The principal attack on the award raises the question whether there was substantial evidence to support the findings that Campellone was employed by Metzger & Son as a special employer, and that he received his injuries in the course of such employment.

Metzger & Son was the general contractor on a construction job at Indio, California, and arranged with John A. Fox, a truck broker, to supervise the hauling or the operation of trucks in connection with the work. Fox was at the same time supplying trucks or supervising their operations on two other construction jobs in the vicinity. The Gagnon Company, learning from Fox that hauling work was available in the vicinity of Palm Springs, acquired a truck and hired Campellone to drive it and to keep it in repair.

On or about November 25, 1942, Campellone drove the truck to Palm Springs, having been instructed by the Gagnon Company to "see Fox to find out where the truck was to work." Campellone, upon being informed by Fox that there were three jobs available, chose to use the truck in connection with the Metzger job. Fox advised him that the truck would be used to haul concrete aggregate from a crusher at Whitewater to the Bell and Whittier Ranches, and directed him to Whitewater with instructions to "see somebody there." The following day, the Gagnon Company was informed by Fox that it would be paid directly by Metzger & Son, and that credit arrangements would be made for gas and oil. Fox agreed to "watch the operation of the truck" for the Gagnon Company.

Campellone commenced work on November 26, 1942, and continued working until he was injured on November 29th. Little supervision was exercised over the men at work. The trucks would pull under a steam shovel, receive their loads, pull out to a scale where weight tickets were made out, and proceed to their destinations where the weight tickets were signed and the loads dumped. Campellone testified that he

merely followed the other trucks; that he never received specific instructions from Metzger & Son either to start or stop loading; that an employee of the latter did instruct him where to dump loads; and that on one occasion an employee of Metzger & Son told him they had enough sand and did not want any more at the time, that they needed crushed rock, and that such rock was available at Cabazon. Fox testified that he directed Campellone to Whitewater on the instructions of Metzger & Son; that the latter's superintendent told him to direct the trucks where to load and unload, and that he gave those instructions to Campellone; that at various times the superintendent personally gave similar instructions to Campellone and to the truck drivers in general; and that among such instructions was the direction to load at Cabazon when the drivers had previously been directed to load elsewhere. Campellone was paid by the Gagnon Company and the Gagnon Company was paid by Metzger & Son after the latter deducted amounts for gas and oil.

On November 29th, the Gagnon Company's truck was damaged while sand was being unloaded at the Whittier Ranch. The driver, Campellone, headed back to Cabazon for another load and decided to repair the truck to prevent sand from spilling. He was injured while making the necessary repairs on a public highway.

Petitioner argues that the Gagnon Company occupied toward Metzger & Son the relation of an independent contractor, and that therefore the relationship between Metzger & Son and Campellone was that of a general contractor and the employee of an independent subcontractor. On the other hand, respondent contends the evidence discloses that Metzger & Son had the right to control the activities of the injured workman, and that it accordingly supports the finding that a special employment relationship existed between the parties.

It cannot be disputed, and respondent commission found, that the injured workman was employed by the Gagnon Company. But an employee may at the same time be under a general and a special employer, and where, either by the terms of a contract or during the course of its performance, the employee of an independent contractor comes under the control and direction of the other party to the contract, a dual employment relationship is held to exist. (*National Auto Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215 [143 P.2d 481]; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516 [139

P.2d 905]; *Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 P. 757].) ▮ The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248 [144 P.2d 16]; *Guarantee Ins. Co.* v. *Industrial Acc. Com., supra; Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 P. 820].) ▮ And, although in distinguishing between an employment and an independent contractor relationship it has been said that "The test of 'control' . . . means '*complete* control' " (*Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807, 811 [159 P. 721]; *S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411, 414 [110 P.2d 377]), it is settled that "a general and special employment relationship is present if there exists in each some power, not necessarily complete, of direction and control." (*National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215, 219 [143 P.2d 481]. See, also, *Diamond D. etc. Co.* v. *Industrial Acc. Com.*, 199 Cal. 694 [260 P. 862]; *Famous P. etc. Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134 [228 P. 5, 34 A.L.R. 765].)

▮ In the present case the evidence does not disclose an express agreement either affirming or denying the right of the claimed special employer to control the manner and method in which the work was performed by the injured workman. The existence or nonexistence of the right must, therefore, be determined by reasonable inferences drawn from the circumstances shown. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248 [144 P.2d 16]; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516 [139 P.2d 905].) ▮ The respondent commission could reasonably infer from the evidence before it that Metzger & Son at least shared the right to control and direct the manner in which the work was to be done. The Gagnon Company had not previously engaged in the trucking business, and Campellone was not one of its regular employees. It did not know, and apparently did not care, for whom the work would be performed or where the performance would take place. The Gagnon Company gave no instructions to the injured employee other than to report to Fox; no one was present at the time and place of performance to direct Campellone other than the representatives of Metzger & Son, including Fox, who the commission justifiably found acted as an agent

for Metzger & Son. From the evidence it could be inferred that the Gagnon Company intended Metzger & Son to share in the control of its employee. The fact that Metzger & Son had control of the premises upon which the work was to be performed, that such work was part of a larger undertaking under its control, that its contract with the Gagnon Company did not contain detailed provisions as to the work to be performed, that it was present at the time and place of performance, and that it actually directed some of the activities of the injured workman, supports the inference that it contemplated directing the manner in which the work was to be done.

If the evidence before the commission was also subject to the inference that Metzger & Son did not have the right to control and direct the activities of the injured workman, we cannot say as a matter of law that the opposing inference drawn by the commission is incorrect. (*Riskin* v. *Industrial Acc. Com.*, 23 ·Cal.2d 248 [144 P.2d 16] ; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516 [139 P.2d 905].)

Moreover, if Campellone was performing services for Metzger & Son at the time of his injury, the burden of proof rested on petitioner to establish that Campellone was an independent contractor or the employee of an independent contractor rather than a special employee of Metzger & Son. (*Riskin* v. *Industrial Acc. Com.*, *supra; Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346 [110 P.2d 64] ; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 P. 570].)

Petitioner next contends that Campellone's injury did not occur in the course of his special employment by Metzger & Son. It argues that the service being performed at the time of injury, namely the repair of the truck, did not benefit Metzger & Son; and that since the Gagnon Company expressly engaged Campellone to keep the truck in repair, it alone had the right of direction and control at the time of injury. It further argues that there has been no showing that Campellone suffered injury as the result of the direction and control of Metzger & Son, and that such a showing is necessary to establish a right to compensation against a special employer.

Whether an employee's injury occurred in the course of his employment is a question of fact to be determined in light of the circumstances of the particular case. (*San Bernardino County* v. *Industrial Acc. Com.*, 217 Cal. 618 [20 P.2d 673] ; *Griffin* v. *Industrial Acc. Com.*, 19 Cal.App.2d 727 [66 P.2d 716].) It is generally said that "an employee is in the

'course of his employment' when he does those reasonable things which his contract with his employer expressly or impliedly permits him to do." (*Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 691 [262 P. 309, 58 A.L.R. 1392]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28, 33 [227 P. 168].) ▉ In view of the policy of liberal construction in favor of the employee, any reasonable doubt as to whether the act performed at the time of injury was contemplated by the employment should be resolved in favor of the employee. (*Matthews* v. *Naylor*, 42 Cal.App.2d 729 [109 P.2d 978]; *Employer's etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089].) ▉ The employee in the present case was, at the time of injury, engaged in repairing a truck used in the course of his special employment. The repairs undertaken were occasioned by an accident in the course of such employment and were such as would facilitate the performance of the employee's services therein. Since the repairs were being made after Campellone had delivered a load of sand at the Whittier Ranch and had started back to Cabazon for another load, the injury occurred within the period of his special employment and at a place where he might reasonably be. ▉ The fact that the Gagnon Company authorized the employee to make repairs does not necessarily establish that it retained the exclusive right of control over the repairs to the truck. The commission could reasonably find that Campellone was performing a service growing out of or incidental to his employment and was therefore engaged in an act impliedly permitted by his special employer. ▉ In arguing that the injury did not arise out of or occur in the course of an employment by Metzger & Son, petitioner cites cases which state that in order to establish the legal relation of special employer and special employee so as to entitle the employee to compensation, it must appear that he suffered injury "as a result of" or "in consequence of" the "direction and control" of the special employer. (*Stacey Bros. etc. Co.* v. *Industrial Acc. Com.*, 197 Cal. 164, 169 [239 P. 1072]; *Famous P. etc. Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134, 136 [228 P. 5, 34 A.L.R. 765]; see, also, *Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51, 55 [262 P. 757]; *Diamond D. etc. Co.* v. *Industrial Acc. Com.*, 199 Cal. 694, 697 [260 P. 862].) Such expressions, however, do not represent the law insofar as they imply that the right to compensation depends upon an actual *exercise* of control by

the special employer. This court has recently held that either the right to control or the exertion of control may show a special employment. (*Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516, 519 [139 P.2d 905]; *National Auto Ins. Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 215, 219 [143 P.2d 481].) As we have said heretofore, the evidence is sufficient to permit an inference that Metzger & Son had at least the *right* of control.

 Petitioner also challenges the jurisdiction of the commission to make the award in this case on the ground that the proceedings before it were initiated by the general employer without the consent and against the wishes of the injured employee. While the commission's power to make an award in such circumstances would appear to find support in *Independence Indem. Co.* v. *Industrial Acc. Com.*, 2 Cal.2d 397 [41 P.2d 320], we do not find it necessary to determine that question in this case. Following the application by the Gagnon Company for adjustment of the claim, Campellone filed an answer setting forth the circumstances surrounding his injury, requesting the commission to find that the Gagnon Company willfully failed to carry workmen's compensation insurance on the date of injury, and praying for "any other or further relief within the circumstances." Clearly, upon the filing of that answer, the commission acquired jurisdiction of the proceeding. Nor can there be any doubt of the propriety of the joinder of Metzger & Son and petitioner as party defendants on the application of the Gagnon Company. By section 5307 of the Labor Code the commission is expressly authorized to "Provide for the joinder in the same proceeding of all persons interested therein, whether as employer, insurer, . . . or otherwise." Although one employer cannot object if the injured employee does not proceed against a second employer who is jointly and severally liable with him (see *Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 8 Cal.2d 589, 591 [67 P.2d 105]), it does not follow that an employer or employee can object to the joinder of such persons.

The award is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied April 4, 1945.