[Civ. No. 8685. Third Dist. Feb. 17, 1955.]

OTHO RIDGEWAY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Bradford, Cross, Dahl & Hefner for Petitioner.

A. E. Corten and T. Groezinger for Respondent Industrial Accident Commission.

Francis B. McGrath for Respondent Trousdale Construction Company.

Mullen & Filippi for Respondent Stenzel.

SCHOTTKY, J.—This is a proceeding to review the findings and award granted to petitioner insofar as it determines that he was an employee of Trousdale Construction Company

at the time of the industrial injury. The award was based on a finding that Trousdale Construction Company was the special employer of petitioner at the time of said injury.

The question presented is whether or not the commission exceeded its jurisdiction in so finding.

Petitioner was a carpenter foreman for Stenzel. On June 1, 1951, petitioner sustained an injury to his back, which injury arose out of and occurred in the course of employment. The commission's referee found that Stenzel was the subcontractor of rough carpentry work on the job and that the persons engaged in such rough carpentry work, including petitioner, were his employees. Petitioner was paid by checks from the Trousdale Construction Company in accordance with the written agreement which provided that Trousdale would carry Stenzel's employees on its payroll ''as an accommodation to Stenzel,'' that Stenzel would prepare the payroll, that Trousdale would make the usual deductions and ''pay Workmen's Compensation Insurance for and on behalf of Stenzel,'' the charges for all of these items to be deducted from the contract price due Stenzel. The agreement also provided that Trousdale was to pay Stenzel $500 a month during the job as ''so-called wages'' with the usual deductions therefrom, but this payment also would be deducted from the contract price at settlement time.

Pursuant to the agreement pertaining to 528 houses, for which the contract price was $218,000, Trousdale settled with Stenzel at the conclusion of the work by paying $33,006.72, showing as deductions from the $218,000 contract price, $171,290.07 expended for payroll and $13,703.21 as payroll deductions made on Stenzel's behalf.

The payment of wages is not of itself sufficient to establish that the recipient thereof is the servant of the one paying the same. (*Independence Indem. Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 P. 757] ; *Guarantee Ins. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 516 [139 P.2d 905].)

Petitioner testified that he took orders only from Stenzel or Carlson, a carpenter foreman and Stenzel's representative in the field. On one occasion a Trousdale foreman attempted to give petitioner an order and this incident appears in the record as follows:

''A. He said, 'Otho, will you come over and straighten the siding on the side of this house?', and I said, 'No, Mac, I won't, because I have got work to do over here. You better

take it up with Swede', and he said, 'OK, I guess I better do that.'

"Q. And when you told him he better take it up with Swede, you had reference to Carlson? A. Carlson.

"Q. You told him you had work of your own to do? A. That is right.

"Q. You didn't take his orders, and for him to get Carlson to get somebody else to do it? A. That is right.

"Q. And do you know if it was done? A. Yes, it was done."

It was upon this incident that the referee based his finding that Trousdale was the special employer of petitioner as he stated in his report: "This indicates to me that Trousdale, as general contractor, did have some control over the details of the work done by Stenzel's employees, even though it exercised that control only indirectly, acting through Stenzel's principal foreman. I believe this is sufficient evidence of the right to control to establish that Trousdale was a special employer of applicant and Stenzel's other employees, although Stenzel was the general employer."

Petitioner contends that the evidence is insufficient to support the finding that the Trousdale Construction Company was a special employer of petitioner. He argues that the above related incident is not sufficient to show that Trousdale had control of the details of the work and that there is no other evidence in the record to show any control by Trousdale of the details of the work performed by Stenzel's employees but only interest in the result of such work.

We do not believe that the evidence sustains the view that Trousdale had any control over the details of the work. We believe, rather, that it supports the view that Trousdale was interested in the result and had the necessary control to attain such result, namely, the normal authority of a general contractor over his subcontractors to see that the work is on time and that it is in accordance with the contract. The contract between Trousdale and Stenzel does not show authority in Trousdale to control the details of the work, but only that he was interested in the result, that is, that Stenzel got the specified number of houses framed or "roughed in" within the allotted amount of time so that the operations of building the whole tract of houses could go along on schedule. A similar situation was involved with the cement men when they weren't pouring foundations fast enough and were slowing down production by Stenzel's men. Carlson went

to McMullen and told him of the delay and he in turn spoke to the foreman of the cement men. McMullen, Trousdale's foreman, was more or less a coordinator, to see that the right things occurred at the right time, that the job flowed smoothly, otherwise production would be hampered and slowed down, thereby causing an inefficient operation and possible great loss to all concerned.

Some other provisions of the contract should be noted. It provides that Stenzel furnish, at his own expense, all necessary labor; that Stenzel's work should be performed by competent and experienced men; that such work be able to pass inspections by the Veterans Administration and/or the Federal Housing Administration and also by the Trousdale Construction Company; that all work be performed in good and workmanlike manner, and materials shall not be wasted but shall be economically used; and that any required corrections to work done shall be made at Stenzel's own expense. The instrument does not give Trousdale any right of control over Stenzel's employees, but shows that Stenzel is to employ the labor necessary to fulfill his contract and that Stenzel himself is *responsible* for required corrections in the work. The contract gives Trousdale the right to inspect and reject the end result done by his independent contractor, the same right given most buyers to reject an unsatisfactory performance in the work product, and demand that the contractor or subcontractor see that the work is corrected.

Testimony showed that in the construction business it is the general practice for a general superintendent to deal directly with the subcontractor and with his foreman when given special authority to do so, but not to deal directly with the employees of such subcontractor. However, this does not show a general practice of making the employees of subcontractor those of the general contractor merely because a defect in the performance of the subcontract must be remedied before it will be accepted. Stenzel testified that Carlson was his representative in the field to handle anything that might arise on the job that came within his portion of the building plan; that is, Carlson was Stenzel's overseer and contact man on the job. So when McMullen was told to see Carlson in regard to correcting some of the work done on the siding of a house, which was not acceptable to the general contractor, it was in accord with the general practice. In performance of the contract obligations to furnish acceptable work, Carlson had the siding corrected. Nowhere in the

record is it shown that Trousdale had any right or attempted to exercise any right of control over the activities or details of work to be done by Stenzel's employees. All requests by Trousdale, through his foreman, for certain work to be done were made to Stenzel or Carlson, and were in accord with the rights under the contract, that Stenzel furnish acceptable work and have certain work done by a certain time, as the completion of the rough carpentry work on three or more houses per day. The only time McMullen ever deviated from this practice was when he addressed petitioner in regard to the siding of the house and petitioner told him to see Carlson. (Petitioner was also a foreman for Stenzel, but was not Stenzel's field man or representative on the job.) McMullen saw Carlson and Carlson had a Stenzel employee other than petitioner correct the work.

It is no doubt true, as contended by respondents, that a dual employment relationship may be found to exist where the employees of an independent contractor come under the direction and control of the other party to the contract giving rise to the employment. As stated in *Industrial Indem. Exchange* v. *Industrial Acc. Com.*, 26 Cal.2d 130, at page 134 [156 P.2d 926]:

"But an employee may at the same time be under a general and a special employer, and where, either by the terms of a contract or during the course of its performance, the employee of an independent contractor comes under the control and direction of the other party to the contract, a dual employment relationship is held to exist. [Cases cited.]"

And in *Wessell* v. *Barrett*, 62 Cal.App.2d 374, 376 [144 P.2d 656] (hearing denied), the applicable law is stated as follows:

"The general principles relating to liability in cases of general and special employment are stated in Campbell on Workmen's Compensation, volume 1, section 457, where it is said: 'The requisites for imposing liability upon both general and special employer are: (1) a loaned employee situation, in which an employee of one is sent to perform labor for another; (2) a common or joint participation in the work and benefit to each from its rendition; (3) some power, not necessarily complete, of direction and control over details in each.'

"In *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432, 439 [177 P. 273], the Supreme Court stated the principle as follows: 'where, at the time of the

accident, both the general and special employer exerted some measure of control over the injured person through their respective foremen or employees, both should be held liable.' The rule has been followed and approved in many later cases, some of which are: *Famous Players Lasky Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134, 137 [228 P. 5, 34 A.L.R. 765]; *Independence Indem. Co.* v. *Industrial Acc. Com.*, 203 Cal. 51, 55 [262 P. 757]; *Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, 227 [263 P. 799]; *Department of Water & Power* v. *Industrial Acc. Com.*, 220 Cal. 638, 641 [32 P.2d 354]; and *Silberman* v. *Industrial Acc. Com.*, 21 Cal.2d 609, 611 [134 P.2d 228]. In *Entremont* v. *Whitsell,* 13 Cal.2d 290 [89 P.2d 392], and *Stewart & Nuss* v. *Industrial Acc. Com.*, 55 Cal. App.2d 501 [130 P.2d 985] emphasis is laid on the right to exercise direction and control, and in *Guarantee Ins. Co.* v. *Industrial Acc. Com.* (22 Cal.2d 516 [139 P.2d 905]) it is said that if the special employer had the right to exercise control over the employee 'it would be immaterial whether she actually exercised the control.' ''

Respondent commission argues that where, as here, there is no express agreement indicating the right of the special employer to exercise the requisite measure of control over the employee, it is a question of fact which may be determined by the trier of facts from the circumstances of the case, quoting from *Industrial Indem. Exchange* v. *Industrial Acc. Com., supra,* where it is stated at page 135:

''In the present case the evidence does not disclose an express agreement either affirming or denying the right of the claimed special employer to control the manner and method in which the work was performed by the injured workman. The existence or nonexistence of the right must, therefore, be determined by reasonable inferences drawn from the circumstances shown.''

It is well established that ''if there is any evidence, whether by direct or reasonable inference, which will support the finding of the commission, a reviewing court has no power to disturb it. [Case cited.] The function of the court on review of the action of the commission is to determine whether the evidence, if believed, is substantial and supports the findings.'' (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684, 692 [252 P.2d 649].) ''Neither may the award be annulled because there are two conclusions which fairly may be drawn from the evidence, both of which are reasonable, the one sustaining and the other

opposing the right to compensation." (*State Emp. etc. System* v. *Industrial Acc. Com.*, 97 Cal.App.2d 380, 382 [217 P.2d 992]; *Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 136 [156 P.2d 926].)

▇▇ Bearing in mind the fundamental rule that in order to establish the relationship of special employer and employee it is necessary that the special employer have some control over the details of the work to be done and not merely in the results accomplished, we are satisfied that the evidence in the instant case does not show, nor is it reasonably inferable therefrom, that Trousdale Construction Company had any control as to the mode of accomplishment, but merely shows that it had control as to the result accomplished. It is apparent that the referee based his opinion on the brief incident hereinbefore set forth when McMullen, Trousdale's general superintendent, endeavored to direct the activities of petitioner. But said incident shows nothing more than the exercise of the right given the general contractor to inspect and reject the end result obtained by one of his independent contractors and to request its correction.

The instant case may be likened to one in which a municipality enters into an agreement whereby certain of its streets will be repaired by an independent contracting paving company. The city's inspector observes a defect in work being performed by the heavy roller. He directs the operator of the roller to remedy the defect. Whether the roller operator complies directly with the *request* of the inspector or requires such request to channel through his foreman, the defect is remedied. In the latter case, the roller operator is injured while performing work under the direction of his paving contractor employer. He files an application for benefits and names the city of Sacramento a defendant. In support of his claim he testifies to the occasion when the city's inspector required that defects in his workmanship be remedied. The commission thus has presented to it a situation exactly analogous to the case at bar. May an award against the city of Sacramento under those circumstances stand? In such situations can it honestly be said the city or general contractor has a right to control an employee of the subcontractor or paving contractor simply by reason of the fact contractual rights legally give them the prerogative to demand that defects be remedied?

Another analogy that might be drawn is the case of the home owner who employs an independent painting contractor

to paint his home. The mistress of the house, not satisfied with paint splashes on other portions of the house, directs one of the workmen to clean it up. He refuses, but when the mistress appeals her case to the foreman, or the independent contractor himself, the job is done. Does that individual painter thus become the employee of the mistress of the house? Must she remain silent and accept any result tendered, at the risk of becoming liable to a painter injured on the job?

In view of the written agreement and the circumstances as shown by the record we believe that to affirm the determination of the respondent commission that petitioner was a special employee of the Trousdale Construction Company would go far toward making every employee of a subcontractor the special employee of the general contractor.

In view of the foregoing the award is annulled insofar as it determines that petitioner was a special employee of Trousdale.

Van Dyke, P. J., and Finley, J. pro tem.,* concurred.

A petition for a rehearing was denied March 18, 1955.

*Assigned by Chairman of Judicial Council.