[Civ. No. 23181. Second Dist., Div. Two. Feb. 3, 1959.]

LOUIS W. MILLER, JR., Appellant, v. LONG BEACH OIL DEVELOPMENT COMPANY (a Corporation), Respondent.

548

Earl A. Barnes for Appellant.

Moss, Lyon & Dunn, Fulton W. Haight and Henry F. Walker for Respondent.

HERNDON, J.—Appellant (plaintiff below) sued to recover damages for personal injuries sustained by him in the cave-in of a trench in which he was working on premises of defendant Long Beach Oil Development Company (hereinafter referred to as respondent). At the time of the accident, appellant was the foreman of a four-man maintenance crew employed by Industrial Suppliers Company and supplied to respondent under a contract which described Industrial Suppliers "as an independent contractor and not as an employee" of respondent. In this common law action for negligence, appellant proceeded against Service Pipe Line Construction Company, the excavator of the trench or ditch which caved in, and respondent on whose premises and for whose benefit the trench had been constructed. Appellant's theory was that the two corporate defendants and certain of their employees had been negligent in failing to shore up the trench in which he sustained his injuries.

By way of affirmative defense, respondent alleged in its answer that appellant was the special employee of both defendants and that the action was accordingly barred by sections 3600 and 3601 of the Labor Code. The action came on for trial before a jury. Motions for a directed verdict having been denied, a verdict was returned in favor of appellant and against both defendants. Thereafter, respondent's motion for judgment notwithstanding the verdict was granted

on the ground that at the time of the accident appellant was respondent's special employee, and that his exclusive remedy was to apply to the Industrial Accident Commission for compensation under the provisions of the Workmen's Compensation Act. (Lab. Code, § 3600 et seq.)

Thus, the sole question here presented is this: did the trial court err in deciding *as a matter of law* (contrary to the jury's implied finding) that appellant was the special employee of respondent at the time of the accident?

Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers—his original or "general" employer and a second, the "special" employer. (*Industrial Indem. Exch.* v. *Industrial Acc. Com.,* 26 Cal.2d 130, 134 [156 P.2d 926]; see generally 1 Campbell, Workmen's Compensation, 408, § 453.) This doctrine has special significance in the situation in which one party engages an independent contractor to perform certain work, and by the terms of the contract or during the course of its performance the employee of the independent contractor comes under the control and direction of the other party to the contract. If relationships of both general and special employer are found to exist, an employee who is injured during the course of the employment may be entitled to compensation from both employers under the Workmen's Compensation Act. (See 27 Cal.Jur. 334, § 56; 1 Campbell, Workmen's Compensation, 412, § 457.) Where the special employment relationship is found to exist, the Industrial Accident Commission has exclusive jurisdiction to award compensation for injuries received during the course of such employment and the injured employee cannot maintain a common-law action for negligence against his special employer. (*Wessell* v. *Barrett,* 62 Cal.App.2d 374 [144 P.2d 656]; see Lab. Code, § 3601.)

The possibility of the existence of a dual employment relationship is well recognized. ██ As stated in *Industrial Indem. Exch.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 130, 134, ". . . an employee may at the same time be under a general and a special employer, and where, either by the terms of a contract or during the course of its performance, the employee of an independent contractor comes under the control and direction of the other party to the contract, a dual employment relationship is held to exist. [Citations.]

■ The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship. [Citations.] ■ And, although in distinguishing between an employment and an independent contractor relationship it has been said that 'The test of "control" . . . means "*complete* control" ' [citations], it is settled that 'a general and special employment relationship is present if there exists in each some power, not necessarily complete, of direction and control.' "

■ But, to constitute evidence of the special employment relationship the special employer must have a power of direction and control over the way in which the work is to be done (*cf. Ridgeway* v. *Industrial Acc. Com.*, 130 Cal.App.2d 841, 848 [279 P.2d 1005]; *Wessell* v. *Barrett, supra,* 62 Cal.App. 2d 374, 376; see 1 Campbell, Workmen's Compensation 410, § 454.) As stated in *Ridgeway* v. *Industrial Acc. Com., supra,* at page 848: "[it is] . . . the fundamental rule that in order to establish the relationship of special employer and employee it is necessary that the special employer have some control over the details of the work to be done and not merely in the results accomplished, . . ." (See also *Doty* v. *Lacey,* 114 Cal.App.2d 73 [249 P.2d 550].)

■ Whether the right to control existed or was exercised is generally a question of fact to be resolved from the reasonable inferences to be drawn from the circumstances shown. (*Industrial Ind. Exch.* v. *Industrial Acc. Com., supra,* 26 Cal. 2d 130, 135; *Guarantee Ins. Co.* v. *Industrial Acc. Com.,* 22 Cal.2d 516, 520 [139 P.2d 905].) ■ And the existence or nonexistence of the special employment relationship barring the injured employee's action at law is generally a question reserved for the trier of fact. (*Doty* v. *Lacey, supra,* 114 Cal. App.2d 73, 80; *cf. Wessell* v. *Barrett, supra,* 62 Cal.App.2d 374, 377; *Madsen* v. *LeClair,* 125 Cal.App. 393 [13 P.2d 939]; *Peters* v. *United Studios, Inc.,* 98 Cal.App. 373 [277 P. 156].)

In *Deorosan* v. *Haslett Warehouse Co.,* 165 Cal.App.2d 599, 612-616 [332 P.2d 422], a common law action for negligence, the trial court granted a nonsuit as to one corporate defendant, the Beagle Products Company, on the theory that as a matter of law the plaintiff was a special employee of Beagle. There was testimony in the record that plaintiff was not an employee of Beagle; that plaintiff was employed and paid by another employer; and that plaintiff was not subject to dismissal by Beagle. The appellate court reversed

the judgment of nonsuit with the observation that ". . . the issue of appellant's status [as a special employee] should have been left to the jury . . ."

On this appeal from a judgment notwithstanding the verdict we must examine the evidence in the light most favorable to appellant. ▮ As stated in *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 649-650 [122 P.2d 576]: "It appears to be the well-established law of this state that the power of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its power to grant a nonsuit (Code Civ. Proc., § 629; *Card* v. *Boms*, 210 Cal. 200 [291 P. 190]; *Hunt* v. *United Bank & Trust Co. of Calif.*, 210 Cal. 108 [291 P. 184]; 7 Cal.Jur. 10-Yr. Supp. 268, § 65c.) Therefore, a motion for judgment *non obstante veredicto* may properly be granted 'when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " And as stated in *Hargrave* v. *Acme Tool & Tester Co.*, 145 Cal.App.2d 469, 472 [302 P.2d 592]: "The trial court is authorized to grant a motion for a judgment notwithstanding the verdict only where, viewing the evidence in the light most favorable to plaintiff, with every legitimate inference drawn in his favor, and disregarding all conflicting evidence, the record is insufficient to support the verdict for plaintiff."

Thus, if the trier of fact could reasonably conclude that the special employment relationship did not exist between appellant and respondent at the time of the accident the judgment notwithstanding the verdict must be reversed. (See *Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, 227-228 [263 P. 799].)

▮ The evidence in the record bearing on the existence of a special employment relationship may be briefly summarized. Appellant had been employed by Industrial Suppliers Company for about four and one-half years prior to the accident. During almost all of that time his work consisted of the supervision of his four-man crew which did small jobs of construction work and maintenance on respondent's oil properties in the Long Beach Harbor area. His services and that of his crew were supplied under a contract between Industrial Suppliers and respondent which was evidenced by a "Service

Order'' the material portions of which are set out in the margin.[1]

Appellant was instructed by his employers, the owners of Industrial Suppliers, to follow the instructions of respondent's field superintendent. Appellant and his crew reported for work every morning at the Industrial Suppliers yard from which they drove about five miles to respondent's premises where respondent's construction foreman, L. J. Smith, would give the crew its daily work assignments. The work generally assigned this crew involved relatively unskilled manual labor such as cleaning the concrete foundations of oil-well pumping units, digging ditches and small construction jobs. Their work was performed with tools owned by Industrial Suppliers and appellant was paid a higher wage than the other members of his crew.

Mr. Smith, respondent's construction foreman, testified that he would call the attention of the crew foreman to any work which he didn't think was right, but he did not supervise the operations or concern himself with the details of the work. On cross-examination he described his relationship with the foreman of various crews of independent contractors employed by respondent as follows: "Q. Does your relationship or duty with respect to these contractors vary in any degree? A. They are primarily the same as with Industrial Suppliers. Q. What is that relationship? A. To outline their work, the construction work we want performed. Q. Then you outline

[1] "(1) CONTRACTOR [Industrial Suppliers] shall furnish all labor, tools, equipment and material necessary for the complete performance of this order unless otherwise provided for herein and shall secure all necessary permits in connection with the performance of the service or acts herein provided for.

"(a) CONTRACTOR agrees that work provided for herein will be done by him, and as an independent contractor and not as an employee of company, and that in doing it he shall comply with all applicable labor laws.

"(3) CONTRACTOR will obtain and maintain in effect Workmen's Compensation Insurance as provided by law.

"(4) Where work is done on COMPANY's premises, Contractor agrees to observe such safety rules that COMPANY shall prescribe as necessary for the protection of COMPANY's personnel and property. CONTRACTOR agrees to limit smoking and the use of fire, including welding and torch cutting to such locations and occasions as are specifically authorized in writing by COMPANY.

"(5) CONTRACTOR agrees to pay any taxes assessed on wages for labor hereunder, and agrees to indemnify and hold harmless the COMPANY from all liability and claims therefor and to make any reports required.

"(6) CONTRACTOR shall segregate invoice to show taxable and nontaxable items."

the work for the contractor or the foreman of the contractor, and he is in charge of the actual supervision of the work itself, is that correct? A. Substantially, yes. By outline the job, we don't have blueprints drawn for most of it. . . . Q. If you decided clean up work needed to be done would you simply contact the foreman of one of these two Industrial Suppliers crews and tell them where to do the work, is that right? A. That is right. Q. I believe you said Mr. Miller was the foreman or pusher of one of those labor crews for Industrial Suppliers? A. He is the foreman for one of the crews, yes. Q. Then if you were to contact Mr. Miller and tell him some clean up work was needed in a particular location, you would simply tell him where the work was to be done, is that right? A. That is right. Q. You would leave it up to his discretion to determine how the work was to be done and what tools were to be used? A. Yes. If I were to go by and see something that I didn't think was right, I would call it to his attention, but I wouldn't go to the job and tell each individual thing to do."

Appellant testified in substance that he would follow the directions of Mr. Smith as to what he should have his crew do. At one point he testified as follows: "Q. Who was your boss? A. Mr. Tighe and Mr. Foudray [the owners of Industrial Suppliers] were my boss. Q. How about Mr. Smith? [Construction foreman for Long Beach Oil Development Co.] A. Mr. Smith told us what to do during the day, gave us locations to do. He didn't tell us how to do the work."

Respondent has directed our attention to certain evidence which undoubtedly would have supported a finding that appellant was the special employee of respondent. (Compare *Ridgeway* v. *Industrial Acc. Com., supra,* 130 Cal.App.2d 841.) For example, the trier of fact could reasonably interpret appellant's testimony that he was told to follow the instructions of respondent's field superintendent as evidence of respondent's right to dictate as to the details of the work. However, in the light of the entire record such testimony could reasonably be interpreted as indicating appellant's duty to follow respondent's directions, not as to detail, but with respect to the assignments to be undertaken and completed. It is not enough for respondent to point to evidence which would support a finding of special employment.

From the record there can be no question but that Industrial Suppliers Company was an independent contractor (*Doty* v.

*Lacey, supra,* 114 Cal.App.2d 73, 77) and that Industrial Suppliers was appellant's original or general employer. The real question is whether the evidence *compels* the conclusion that as between appellant and respondent the special employment relationship was created, or whether the trier of fact could reasonably conclude that respondent did not exercise, or have the right to exercise, sufficient control over the details of appellant's work to become his special employer. There is abundant evidence in the record from which the trier of fact reasonably could conclude that respondent did not become appellant's special employer. Appellant's wages were paid by Industrial Suppliers, not by respondent (*cf. Ridgeway* v. *Industrial Acc. Com., supra,* at 843). Respondent did not have the power to discharge appellant; if dissatisfied respondent might have asked for another foreman, but it had no power to terminate appellant's employment. (*Cf. Doty* v. *Lacey, supra,* at 77.) At the time of the cave-in, Mr. Smith, respondent's construction foreman was not present overseeing the trench cleaning operation, nor was appellant under his direct supervision and control. (*Cf. Wessell* v. *Barrett, supra,* at 375.)

As the foreman of the crew performing services for respondent, appellant presumably would direct and supervise the activities of his subordinates. The jury might reasonably conclude that Mr. Smith's directions dealt with the results to be accomplished by the group labor of the crew and not with appellant's activities in supervising their performance. The contract between respondent and Industrial Suppliers describes the latter as an independent contractor and not an employee. Although the writing is by no means conclusive as to respondent's right to exercise control over the details of appellant's work, with other evidence it is a sufficient basis for the inferences as to the absence of the special employment relationship which the jury evidently drew.

Conceding that respondent had the power to direct the time and place of appellant's performance of his labors and the result to be obtained, such general supervisory power over the employee of an independent contractor does not constitute conclusive evidence of the special employment relationship. (*Ridgeway* v. *Industrial Acc. Com., supra,* at 848-849.) Thus the jury might reasonably have inferred that the directions given plaintiff by respondent's construction foreman ". . . were merely directions as to the result to be accomplished, such as are required in the nature of things to be

given to independent contractors in any case." (*Umsted* v. *Scofield Eng. Const. Co., supra,* 203 Cal. 224, 230.)

Examining the record in the light of the above cited cases, we conclude that there is substantial evidence upon which the trier of fact could find that the special employment relationship did not exist between appellant and respondent. It follows that the trial court erred in granting the judgment notwithstanding the verdict.

Reversed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied February 27, 1959, and respondent's petition for a hearing by the Supreme Court was denied April 1, 1959.