[Civ. No. 12159. Third Dist. June 10, 1970.]

JACQUELINE RULLMAN, Plaintiff and Respondent, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Rich, Fuidge, Dawson, Marsh & Morris and Charles Dawson for Defendant and Appellant.

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein and Keith Humphreys for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, J.**—A widow sues for the death indemnity provided by her husband's automobile insurance policy. The trial court sustained her claim and the insurer appeals.

Four clauses of the policy are significant in determining coverage. The death indemnity clause provided for payment " . . . in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided the death shall occur within 90 days from the date of such accident."

Another section of the policy set forth a series of definitions, including: "Occupying—means in or upon or entering into or alighting from."

The policy contained another significant definition: "Automobile—means a land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle."

Finally, the policy contained the following exclusion applicable to the death indemnity coverage: "Insuring Agreement IV does not apply: (a) to bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance, commercial automobile, ambulance, fire truck, police car or other emergency vehicle, or (2) in duties incident to the repair or servicing of automobiles;"

The husband was killed while working for the United States Bureau of Reclamation as a member of a crew operating a mobile earth drill. The drilling machinery and tower, the latter a skeletal steel structure, were mounted in semipermanent fashion upon the bed of a flatbed International truck. The drill engine occupied the front portion of the truck bed; a cable drum and tower base occupied the rear. When not in operating position, the 33-foot long tower extended horizontally toward the front of the truck, its upper portion extending forward over the cab roof and resting upon a steel frame welded, bolted or riveted to the front bumper. The tower would pivot upward in response to controls. The controls consisted of a set of levers located at the left rear of the truck bed and extending out to its edge. Because it was used in terrain away from the highway, the truck was equipped with special flotation tires.

At the time of the fatal accident, the crew were engaged in earth drilling

some distance from any public road. Decedent, standing on the ground at the rear of the truck, operated the lever which caused the drill tower to pivot upward. As the tower rose, it came into contact with a high-voltage power line. Decedent was still grasping the metal control lever. He was electrocuted.

The insurance carrier contends that the equipment was not an *automobile* within the meaning of the policy; that decedent was not *occupying* it; that the circumstances of the accident brought it within the exclusion clause.

■ The ultimate conclusion to be drawn from undisputed facts is a question of law for the appellate court. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 175].)
■ Was the vehicle an automobile as defined by the policy? If the policy is ambiguous at this point, the uncertainty must be resolved against the insurance company; if clear, the court will indulge in no forced construction to cast a liability upon the company which it had not assumed. (*New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510].)
■ A policy provision is ambiguous when it is capable of two or more different constructions, both of which are reasonable. (*O'Doan* v. *Insurance Co. of North America* (1966) 243 Cal.App.2d 71, 77 [52 Cal.Rptr. 184].) While some ambiguities are intrinsically so, others appear or disappear in relation to particular facts. If indeed there is an ambiguity here, it is of the latter sort.

■ The piece of equipment involved in the fatal accident was compounded of an ordinary flatbed truck and drilling machinery. It was neither entirely one nor the other, but a conceptually inseparable synthesis of both. It might be labeled a truck with a drill rig mounted on it or, alternatively, a mobile drill rig. It was certainly a *land motor vehicle* within the policy's definition of an *automobile*. The definition excluded equipment *designed for use principally off public roads*. The exclusion was expressed not in terms of labels, natural or contrived, but in terms of (a) the use, i.e., function or purpose, for which the equipment was designed and (b) the principal location of that use. What was its use, function or purpose? To drill holes. Where? Off the public roads, not in or upon the public roads and, certainly, *principally* off the public roads. When this policy exclusion is viewed in the very terms in which it was expressed, that is, in terms of the use for which this compound piece of equipment was designed and of the principal location of that use, there is no ambiguity whatever. This synthesized piece of equipment was *designed for use principally off public roads*.

Of course, in construing standardized insurance clauses, a court should bear in mind the parties' reasonable expectations of coverage. (*Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705,

465 P.2d 841].) In this case decedent, the policyholder, had bought an automobile policy, one which bore the additional feature of a death benefit for fatal injuries suffered when the insured was occupying or struck by an automobile, which in natural contemplation is a land motor vehicle designed for transportation on public roads. The policy definition did not defeat that expectation, for the functional exclusion of a land motor vehicle designed for use off the public roads was, in turn, reduced by a temporal exception, that is, the vehicle would metamorphose into an automobile while it was actually upon a public road. Both the design exclusion and its temporal reduction fitted the reasonable expectations of the buyer of automobile coverage.

In relation to the facts at hand, only one construction of the automobile definition is reasonably possible. The equipment was designed for use principally off public roads and was not actually upon public roads when the accident happened. Hence it was not an automobile.

The parties have debated the question of occupancy and the vehicle's status as a commercial automobile. (See *Dilley* v. *State Farm Mutual Auto. Ins. Co.* (1967) 249 Cal.App.2d 385 [57 Cal.Rptr. 195]; Note, 18 A.L.R. 2d 719.) The latter argument has revolved around the fact that the Bureau of Reclamation, owner of the equipment, was not in a commercial business; alternatively, that the equipment was not a private or pleasure vehicle. (See *Ferguson* v. *State Farm Mut. Auto. Ins. Co.* (1967) 281 Ala. 295 [202 So.2d 81]; *Hendricks* v. *American Employers Ins. Co.* (La.App. 1965) 176 So.2d 827; *Hardee* v. *Southern Farm Bureau Cas. Ins. Co.* (La. App. 1961) 127 So.2d 220.) Since the equipment was not an automobile in the policy sense, we rest the decision on that point alone.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.