[Civ. No. 1237. Fifth Dist. Oct. 27, 1970.]

ESTHER OXFORD et al., Plaintiffs and Appellants, v.
SIGNAL OIL AND GAS COMPANY, Defendant and Respondent;
ARGONAUT INSURANCE COMPANY, Intervener and Appellant.

## Counsel

Masry & David, Bernard Leckie and Ronald M. Cohen for Plaintiffs and Appellants.

Hanna & Brophy and Richard Brophy for Intervener and Appellant.

Raymond & Noriega, Joseph F. Noriega and Thomas M. Stanton for Defendant and Respondent.

## Opinion

GARGANO, Acting P. J.—Plaintiffs are the heirs at law of decedents Rex Oxford and Richard Akins. They brought this action against Signal Oil & Gas Company, Howard Chase, Larney Hollick, and others, to recover damages for the wrongful deaths of the decedents, who were killed on February 10, 1967, in the explosion of a "spent caustic tank" belonging to Signal.

Intervener is the workmen's compensation insurance carrier for the Trans-Pacific Company, a company engaged in the business of supplying labor to the oil industry. At the time of death, decedents were in the general employment of Trans-Pacific, and plaintiffs received death benefit awards against that company pursuant to the workmen's compensation law of this state. Intervener filed a complaint in intervention, seeking subrogation under Labor Code section 3852.

After issue was joined on the complaints, all defendants moved for summary judgment, alleging that decedents were Signal's special employees, that they were killed in the course and scope of that employment, and that plaintiffs' exclusive remedy was to proceed under the workmen's compensation law. The motions were based on the affidavits of Donald R. Brand, Howard Chase and Larney Hollick. A brief resumé of these affidavits follows.

Donald R. Brand stated that he was an area supervisor for Trans-Pacific; that Trans-Pacific assigned the decedents to work for Signal at Signal's refin-

ery in Bakersfield; that both men worked there continuously for several years, Akins since 1963 and Oxford since late in 1964; that decedents remained on Trans-Pacific's payroll but Trans-Pacific exercised no control over any of the work performed by decedents for Signal; that during the entire period when decedents worked for Signal, Signal specified the work assignments, furnished the work tools, and exercised supervision and control.

Larney Hollick declared that he was a "Number 1 mechanic" employed by Signal at the Bakersfield refinery; that for the continuous period of more than one year prior to their deaths, decedents worked at the refinery, as roustabouts, on a variety of assignments, from cleaning tanks to mowing the lawn in front of the refinery office; that decedents worked under the direction of Signal's foreman, Howard Chase, but on occasions Hollick received the work orders from Chase and then relayed them to decedents; that on the day of the fatal accident decedents and Hollick were engaged in cleaning a spent caustic tank under the direction and supervision of the foreman; that decedents were killed when the tank exploded about an hour after they returned from a coffee break they had taken with the foreman's explicit permission.

Howard Chase averred that he was employed by Signal as a foreman at the Bakersfield refinery and that the decedents, Rex Oxford and Richard Akins, were members of his work crew and had worked under his direction and supervision for more than one year; that he specified all work assignments, generally exercised the duties of being decedents' foreman and if dissatisfied with decedents' work could have terminated their employment at Signal by notifying Trans-Pacific; that before assigning decedents to the job of cleaning the spent caustic tank which exploded, he assisted them in obtaining proper tools and gave them general directions as to the work details.

By stipulation, the motions for summary judgment were submitted for decision on the affidavits we have summarized, and on the depositions which were on file at that time. The court granted Signal's motion, but denied the motions of Chase and Hollick. Plaintiffs and intervener appeal from the summary judgment entered in Signal's favor.

It is undisputed that at the time of death decedents were the general employees of Trans-Pacific, and that both men had been assigned to Signal pursuant to an employment contract under which Trans-Pacific took care of the payroll and all incidental employment benefits. It is also undisputed that decedents died on Signal's premises while cleaning a "spent caustic tank" belonging to Signal. The crucial question, therefore, is whether, at the time of their deaths, decedents were in the special employment of Signal. ▮ It is settled that where there is a general and a special employment relationship, both employers are liable for the payment of benefits under the workmen's compensation law, and that the employee may proceed against either em-

ployer. (*National Auto. Ins. Co.* v. *Ind. Acc. Com.,* 23 Cal.2d 215 [143 P.2d 481].) However, as in the case of general employment, when workmen's compensation is available against the special employer it ordinarily constitutes the workman's sole remedy against that employer. (Lab. Code, § 3601.) In short, where there is a dual employment, the injured workman can look to both employers for compensation benefits, but ordinarily he is barred from maintaining an action for damages against either employer. (*McFarland* v. *Voorheis-Trindle Co.,* 52 Cal.2d 698, 702 [343 P.2d 923].)

■ An employer-employee relationship is created when a person is employed to render a ". . . service to his employer, other than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the employer." (32 Cal.Jur.2d, Master & Servant, § 2, p. 394.) ■ Generally, "The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship." (*Industrial Ind. Exch.* v. *Ind. Acc. Com.,* 26 Cal.2d 130, 135 [156 P.2d 926].) Consequently it is stated that "Where an employer loans or furnishes an employee to another person who puts the employee to work on a job and directs his activities, a 'general and special' employment relationship is created." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.), § 305.4(a), pp. 3-26, 3-27.) ■ And, while the power to discharge the employee is strong evidence of the existence of the special employment (*National Auto. Ins. Co.* v. *Ind. Acc. Com., supra,* 23 Cal.2d 215, 219, 220), the payment of wages is not determinative. (*Guarantee Ins. Co.* v. *Ind. Acc. Com.,* 22 Cal.2d 516, 520 [139 P.2d 905].) Further, albeit the paramount consideration is "whether the alleged special employer exercises control over the details of the work" (*McFarland* v. *Voorheis-Trindle Co., supra,* 52 Cal.2d 698, 705), other important factors to be considered are the nature of the services, whether skilled or unskilled, whether the work is part of the employer's regular business, the duration of the employment period, the method of payment, and who supplies the work tools. (*Housewright* v. *Pacific Far East Line, Inc.,* 229 Cal.App.2d 259, 266 [40 Cal.Rptr. 208].)

■ The court did not abuse its discretion in this case. Decedents were killed while working on a job to which they were assigned by Signal's foreman, and over which the foreman had control of the details of the work; for several years prior to their deaths, decedents worked continuously for Signal, at unskilled labor, upon Signal's premises, and in connection with Signal's regular business; during the entire period that decedents worked for Signal, Signal, through its own foreman, exercised supervision and control to the exclusion of the general employer, specified all work assignments, furnished the work tools, controlled the details of the work, and, if dissatisfied with de-

cedents' services, could terminate the employment at the Signal plant by notifying the general employer. It is difficult to visualize a more compelling set of circumstances for the creation of a special-employment relationship.

Appellants do not rely on any counter-declaration of their own to offset the affidavits upon which Signal's motion for summary judgment was predicated. Instead, they intimate that there are triable issues because "The creation of a special employment relationship is dependent on many facts and cannot conclusively be determined as a matter of law without a full hearing of all of the evidence." Appellants assert that decedents were roustabouts and may not have appreciated the danger involved in cleaning a "spent caustic tank." They suggest that this factor raises a question as to whether the men were killed in the course and scope of their special employment with Signal. Appellants also imply that if permitted to go to trial, they might have proved that decedents' deaths were proximately caused by the recklessness of Howard Chase and Larney Hollick. Lastly, they allege that there are unresolved conflicts between the affidavits upon which the summary judgment was predicated and the depositions of William Arthur Thompson III and Howard Chase.

Mr. Thompson was a corporate director of Trans-Pacific. He testified that decedents were the employees of that Company.

In his declaration, Howard Chase stated: "I was not involved in determining matters involving payroll, vacations or fringe benefits but I was charged with the responsibility and exercised the duties of being their foreman and supervisor. These duties and responsibilities included the termination of their employment at the Signal Oil and Gas Refinery, if their work should have been unsatisfactory, by notifying their general employer, the Trans-Pacific Company."

On the other hand, Chase testified as follows: "Q. If they wanted a vacation a particular time of the year they came to you for approval? A. No, no, they did not. Q. You had nothing to do with that? A. No. Q. Did you know they were working for a company other than Signal? A. Yes, I did. Q. You knew they were working for Trans-Pacific? A. Yes. Q. Was it your opinion that you could fire either of them? A. No."

Admittedly, a summary judgment is not a trial upon the merits, and if an issue of fact is raised the case must proceed to trial. (*Bank of America v. Casady,* 15 Cal.App.2d 163, 168 [59 P.2d 444].) The remedy is drastic in nature, should be resorted to sparingly, and if there is any doubt as to whether it should be granted such doubt must be resolved against the moving party. (*Johnson* v. *Banducci,* 212 Cal.App.2d 254, 261 [27 Cal.Rptr. 764]; *Silver Land & Dev. Co.* v. *Cal. Land Title Co.,* 248 Cal.App.2d 241,

242 [56 Cal.Rptr. 178].) ▮Nevertheless, a summary judgment is addressed to the sound discretion of the trial court, and the exercise of that discretion should not be disturbed on appeal if it is clear that the action has no merit and that there are no triable issues. (*Hicks* v. *Bridges,* 152 Cal.App.2d 146 [313 P.2d 15].) Triable issues are ". . . facts which are material to the lawsuit and could change the result one way or the other if resolved in favor of one side or the other." (*Pettus* v. *Standard Cabinet Works,* 249 Cal.App.2d 64, 69 [57 Cal.Rptr. 207].)

Appellants' arguments do not delineate triable issues. First, decedents were members of Howard Chase's work crew and had been directed by Chase to work on the job on which they were killed; it would be inconceivable to hold that decedents were not acting in the course and scope of their employment merely because they may not have appreciated the danger involved in the job. ▮ Second, it is true that Labor Code section 3601 does not preclude an action for damages for injuries caused by a fellow employee's alleged reckless disregard for the injured person's safety. The action, however, must be brought against the fellow employee, not the employer. Third, Thompson's testimony is consonant with Signal's theory of a dual employment; the possibility of a dual employment has long been recognized in this state. (*Industrial Ind. Exch.* v. *Ind. Acc. Com., supra,* 26 Cal.2d 130, 134; *Miller* v. *Long Beach Oil Dev. Co.,* 167 Cal.App.2d 546 [334 P.2d 695].) ▮ Finally, when Chase's affidavit and his deposition testimony are read in context, it is clear that although he knew decedents were the general employees of Trans-Pacific and he could not discharge them from that employment, he also believed he had the right to terminate their special employment with Signal by merely notifying Trans-Pacific; it is the right to terminate the special-employment relationship, not the right to discharge the employee outright, that is important in determining whether there is a special employment. (*Sehrt* v. *Howard,* 187 Cal.App.2d 739, 743 [10 Cal.Rptr. 128].) ·

Appellants next contend that the judgment should be reversed because the employment contract between Signal and Trans-Pacific itself proves that a special-employment relationship was never intended. They rely on the contractual provisions requiring Trans-Pacific to maintain decedents on the payroll, to provide workmen's compensation insurance for them, to indemnify Signal for any liability resulting from the employment, and to assume any tax relating to unemployment insurance.

This contention seemingly challenges the dual-employment concept in a case in which the general employer pays the employee's salary and the costs for the incidental benefits. But, the decisional law does not support appellants' thesis. The case of *Sehrt* v. *Howard, supra,* 187 Cal.App.2d 739,

is a good example. Sehrt, an employee of the Riverbank Oil Company, was injured while working with the defendant. Howard, an independent contractor, hauled hay for Riverbank and whenever he needed assistance, Riverbank furnished Sehrt to help him. Sehrt was paid by Riverbank, was told where to work by Riverbank, and only Riverbank could terminate his employment. However, when working on the hay truck, Sehrt took orders from Howard and if Howard did not want Sehrt on the truck he could dispense with his services. The court, in reversing a judgment for damages in Sehrt's favor, stated, at page 743: "We are of the opinion that only one inference can be drawn from the evidence and that as a matter of law Sehrt was in the special employment of Howard. Clearly, when a master lends his servant to another, the servant goes to the other at the direction of the master. In such a situation the master has residuary control. He can recall the servant at will; he can discharge the servant or give him other orders. But this is not the test of special employment. The test is whether the special employer has the right to control the details of the work for which the employee was loaned."

Appellants' final thrust is that the judgment is contrary to the decision of the Workmen's Compensation Appeals Board. Briefly, they argue that the court found that decedents were the employees of Trans-Pacific, and the board's failure to also find that they were the special employees of Signal is tantamount to a finding that there was no special employment.

This contention is devoid of merit. As we have stated, in the case of a dual employment the injured employee may seek a workman's compensation award from the general employer, the special employer, or both employers. (*National Auto. Ins. Co.* v. *Ind. Acc. Com., supra,* 23 Cal.2d 215.) In the instant case, decedents elected to proceed against only Trans-Pacific; thus the issue of special employment was not presented to or resolved by the Workmen's Compensation Appeals Board, by implication or otherwise.

The judgment is affirmed.

Coakley, J., concurred.