[Civ. No. 33087. First Dist., Div. Three. Nov. 4, 1974.]

WILLIAM J. MARTIN, Plaintiff and Appellant, v.
PHILLIPS PETROLEUM COMPANY, Defendant and Respondent;
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Intervener and Appellant.

**COUNSEL**

Dolgin, Kully & Jameson, David A. Dolgin and Bruce I. Cornblum for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Arne Werchick, Stephen I. Zetterberg, Robert G. Beloud, Ned Good, David B. Baum, Elmer Low and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Leonard & Thomas for Intervener and Appellant.

Gordon, Waltz & DeFraga, Allan DeFraga and James A. Pezzaglia for Defendant and Respondent.

## OPINION

**DEVINE, J.**\*—Plaintiff, William J. Martin, and intervener, Hartford Accident and Indemnity Company, appeal from a judgment rendered by the court in the first part of what was scheduled to be a bifurcated trial. The judgment, in favor of Phillips Petroleum Company, defendant, is based on the conclusion that Martin was a special employee of the defendant at the time he allegedly sustained injuries referred to in his complaint. The Hartford Company, as workmen's compensation insurance carrier for Plant Maintenance, Inc., has paid all of the benefits required by the Labor Code. Plant Maintenance surely was the general employer of Martin, and it is contended by appellants that it was his sole employer. If the court's finding and conclusion that Phillips was Martin's special employer at the time of the asserted injury be correct, it follows that plaintiff may not have damages by means of this personal injury action against Phillips. (Lab. Code, § 3601; *Sehrt* v. *Howard,* 187 Cal.App.2d 739 [10 Cal.Rptr. 128]; *Oxford* v. *Signal Oil & Gas Co.,* 12 Cal.App.3d 403 [90 Cal.Rptr. 700]; *McFarland* v. *Voorheis-Trindle Co.,* 52 Cal.2d 698, 702 [343 P.2d 923].) On the other hand, he would be entitled to workmen's compensation from either or both employers. (*McFarland* v. *Voorheis-Trindle Co., supra,* at p. 702; *Oxford* v. *Signal Oil & Gas Co., supra,* at p. 411; *National Auto. Ins. Co.* v. *Ind. Acc. Com.,* 23 Cal.2d 215, 219 [143 P.2d 481]; *Dept. of Water & Power* v. *Ind. Acc. Com.,* 220 Cal. 638 [32 P.2d 354].)

### *The Contract Between Plant Maintenance and Phillips Petroleum*

Although the contract names Tidewater Oil Company as one of the parties, it was stipulated that Phillips Petroleum is the successor of Tidewater and that the contract is binding on Phillips. We shall refer to Phillips as a party without further reference to Tidewater. Plant Maintenance is in the business of supplying manpower to oil refineries and other industries. Plaintiff had been an employee of Plant Maintenance for several years before the accident, but he had worked at the Avon refinery of Phillips for about a year, or perhaps as much as two years, according to his testimony. The terms of the contract are such as obviously to be designed to designate workmen as employees of Plant Maintenance only and to prevent Phillips from being considered a special employer. Thus, the contract provides that Plant Maintenance is not the agent of Phillips but is an independent contractor; that Plant Maintenance maintains complete control over its employees; that this is so even "as an aid to Contractor [Plant Mainte-

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

nance]," some of the employees may work solely or partially under the direction or supervision of Phillips; such direction or supervision shall be for contractor's benefit and account; that contractor shall constantly superintend said work by its own superintendent and instructions given superintendent shall be deemed to have been given to the contractor; and that all the employees shall be deemed to be employees of contractor for all purposes, notwithstanding any finding that their work is wholly or partially under the direction or supervision of Phillips.

Even before considering the factual situation which the trial judge impliedly found to be incompatible with the written contract, we note that the labored effort to maintain independence of the two potential employers in itself gives evidence that the independence is fictitious. For example, how can it be believed that work done by laborers shall be for Plant Maintenance's benefit, except of course for the fact that Plant Maintenance expects to be paid by Phillips? What other benefit does Plant Maintenance gain from work done at an oil refinery? And by brief reference to the facts as described below, what does an employee whose work calls for using a jack hammer have to do with the interest of a general supplier of labor? Further, the provision in the contract that the employees shall be deemed to be those of Plant Maintenance, *notwithstanding any finding* that the work is performed under the direction or supervision of Phillips, appears to be an attempt to control the status of the various parties despite a finding by a court or by the Workmen's Compensation Appeals Board. The contract cannot affect the true relationship of the parties to it. Nor can it place an employee in a different position from that which he actually held. (*Mark Hopkins, Inc.* v. *Cal. Emp. etc. Com.,* 86 Cal.App.2d 15 [193 P.2d 792]; *Stewart & Nuss* v. *Ind. Acc. Com.,* 55 Cal.App.2d 501, 506 [130 P.2d 985].)

We find nothing in the nature of estoppel to prevent Phillips from asserting the true situation. It does not seem that the case was tried on the theory of estoppel. The record contains no request for a finding on the subject of any intention on the part of respondent that its conduct should be acted upon or that appellant Martin himself relied upon any deceptive representation or concealment under a duty to speak or to the injury to appellant Martin. Appellants relied on the written contract and on such facts, as set forth below, which would favor their position, contending at all times, as they do on appeal, that Plant Maintenance was the sole employer of Martin. The essential elements of estoppel are lacking. (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773 [8 Cal.Rptr. 448, 356 P.2d 192].)

Although a conclusion that Martin was a special employee of Phillips

cannot be squared with the terms of the written contract, it does, as we view the totality of the circumstances, comport with the law and the decisions. The workman is assured of recovery for an industrial injury from both employers, and although in this particular case the general employer's carrier has paid the benefits, the special employer was likewise liable. The true relationship between the parties, rather than the professed one, should be held to establish the rights and duties of the parties. Although the Legislature has recognized, as a practical matter, the respective liabilities of insurance carriers in a general-special employer situation, by providing in Insurance Code section 11663 that the insurer of the general employer is liable for the entire cost of compensation unless the special employer had the employee on his payroll at the time of injury, the section does not purport to abrogate the rule of liability of full employers. (*Argonaut Ins. Exch.* v. *Ind. Acc. Com.*, 154 Cal.App.2d 703 [316 P.2d 759]; *McFarland* v. *Voorheis-Trindle Co.*, 52 Cal.2d 698 [343 P.2d 923].) Thus the employee has the benefit of having the special employer as an additional party responsible for any industrial injury which he suffers on that employer's job. If there be serious and willful misconduct on the part of the special employer (which creates a liability which cannot be insured against), no doubt he has the right to an increased award against the special employer under Labor Code section 4553.

### The Accident

The injury took place during plaintiff's lunch hour. He had gone to a locker room which, although it was on Avon's premises, was provided by Plant Maintenance. It is alleged that the defendant negligently maintained the lockers within the room, so that they fell on plaintiff. We do not find merit in the suggestion by appellant that because he had retired to the locker room for luncheon, he was not under the direction of the special employer. The ordinary rule as to breaks for luncheon, etc., applicable to workmen's compensation cases, obtains. (See Herlick, Cal. Workmen's Compensation Law Handbook, § 10.12, p. 259.)

### The Contract of Hire

Although Phillips did not expressly make a contract of employment with Martin, Martin's consent may be inferred from his acceptance of the special employer's control and direction. (1A Larson's Workmen's Compensation Law, § 48.10.) The long term during which Martin did the work of Phillips confirms this inference. Martin did not know of the contract between Plant Maintenance and Phillips, and knew that he was on the payroll of the former, but it is evident that he knew the general situation because

he testified, "when I was hired out I was hired out to work at Shell and then I came to Phillips and I stayed."

### *Special Employment*

An analysis of the various elements which, taken as a whole, determine the relationship of Martin to Phillips convinces us that Martin was a special employee.

1. *Payroll.* Martin was on the payroll of Plant Maintenance. Withholding of taxes and social security contributions was handled by Plant Maintenance. This is relatively unimportant. No doubt the service rendered was of value to Phillips, but it has nothing to do with the duties performed by the employee.

2. *Duration.* Martin worked for Phillips without interruption for at least a year, and possibly two, a factor tending to show special employment. (*Oxford* v. *Signal Oil & Gas Co., supra,* 12 Cal.App.3d at p. 408.)

3. *Nature of the work.* Martin had two categories of employment: laborer and brick mason. Just before the accident, he had been using a jack hammer, which he was permitted to do by union rules in his capacity as brick mason. The relatively unskilled nature of the services which would make them readily subject to control by Phillips' foreman also tends to show special employment. (*Oxford* v. *Signal Oil & Gas Co., supra,* at p. 408; *Housewright* v. *Pacific Far East Line, Inc.,* 229 Cal.App.2d 259, 266 [40 Cal.Rptr. 208].) As said above, the work properly performed was of benefit to Phillips, and only in a general way unrelated to the performance of the details of the task was it of use to Plant Maintenance.

4. *Work tools.* Basically, all of the tools, including hard hats, and in particular the jack hammer which plaintiff had been using, were supplied by Phillips, another indication of special employment.

5. *Badges.* Plant Maintenance employees were issued badges, which they did not always wear, to distinguish them from employees on the Phillips payroll. This factor may have some slight bearing against the proposition of special employment, but there is nothing in the record to show of what practical use the badges were in the performance of the required tasks.

6. *Check-in and assignments.* Plant Maintenance kept a foreman of its own on the refinery premises, but all he did was to check-in the Plant Maintenance employees as they appeared and to hand them their day's assignments, which the foreman in turn had received from Phillips. Plant

Maintenance's foreman had nothing to do with the details or quality of the work.

7. *Right to terminate.* The right to terminate employment is a significant factor in showing the right of control. Although Phillips did not have the right to fire Plant Maintenance men and did not attempt to do so, it was testified by Plant Maintenance's officer that on request of Phillips to terminate an employee, "we got him out." A Phillips foreman testified that he knew of no instance where Plant Maintenance refused to remove an employee from the job at Phillips' request. Indeed, it would seem unlikely that Plant Maintenance, if it hoped for a renewal of the contract, would insist that an unsatisfactory employee be retained on the Phillips job. It is the right to terminate the special employment relationship and not the right to discharge the employee outright that is important. (*Oxford* v. *Signal Oil & Gas Co., supra,* 12 Cal.App.3d at p. 410; *Sehrt* v. *Howard, supra,* 187 Cal.App.2d at p. 743.) If grievances by a union were presented, the arbitration was conducted with Plant Maintenance as a party. But this result naturally flows from its capacity as general employer and does not have much significance in determining the relationship of Martin to Phillips.

8. *Control and supervision of the work.* This is the most important factor. The record, although brief, is replete with testimony that control and supervision of the actual work was done by Phillips' foremen. Phillips laid out the work to be done. Phillips supervised the details and quality of the tasks performed. ▆ The fact that the general employer has residuary control, can recall the employee at will, and can discharge the employee or give him other orders is not the test of special employment. The test is whether the special employer has the right to control the details of the work for which the employee was the "lent" or "loaned" employee. (*Sehrt* v. *Howard, supra,* 187 Cal.App.2d at p. 743.)

9. *Belief of the parties.* As in the *Oxford* case, Phillips' only representative to testify knew that he could not discharge employees, but he also believed that he had the right to terminate their special employment by merely notifying Plant Maintenance. He understood that he had the right to control the specifics of the work. Although Martin knew nothing of the contract between Plant Maintenance and Phillips, and knew that he was on the former's payroll, he was aware of course that his day by day and hour by hour work was under the direction of Phillips.

In conclusion, we are of the opinion that the correct criterion is not what sort of arrangement two parties, one of them truly a general employer and the other a special employer, may describe on paper, but what

actually is the nature of the transactions and relationship between them and with an employee.

The judgment is affirmed.

Draper, P. J., concurred.

**BROWN (H. C.), J.,** Dissenting.—Appellant Martin, an employee of Plant Maintenance, filed a complaint alleging that he sustained personal injuries as the result of Phillips' negligence while working on its property. Phillips denied negligence and, as a special defense, alleged that at the time of the accident Martin was the special employee of Phillips. The majority of this court affirmed the trial court's judgment that Martin was a special employee of Phillips and as such was barred from maintaining an action for damages for personal injuries. The burden of proving the affirmative defense of "special employment" was, of course, upon Phillips who asserted it.

Whether the special employment relationship existed in the present case is dependent upon the facts. As the facts here are undisputed, the ultimate conclusion to be drawn from these facts is a question of law for the appellate courts. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 238 [82 Cal.Rptr. 175, 461 P.2d 375]; *Jones* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 127 [97 Cal.Rptr. 554]; *Rullman* v. *State Farm Mut. Automobile Ins. Co.* (1970) 8 Cal.App.3d 606, 609 [87 Cal. Rptr. 551].)

The majority in arriving at their opinion that a special employment relationship existed did so on the basis that (1) the contract establishing the rights and duties of Phillips and Plant Maintenance does not control the question of Phillips' relationship to Martin and, in fact, is evidence that their independence is fictitious; (2) the totality of circumstances, particularly the control Phillips exercised over Plant Maintenance employees, showed a special employment relationship; and (3) the contract between Plant Maintenance and Phillips did not estop Phillips from asserting the defense of special employment.

I am in agreement with the majority that Phillips was not estopped by the provisions of the contract between Phillips and Plant Maintenance to assert the defense of the special employment relationship between Phillips and Martin. It is my position that Phillips could assert that defense but failed to sustain its burden of proving it.

The majority's disparagement of the contract between Plant Maintenance and Phillips is, in my opinion, illogical, suggesting, as it seems to,

that the very attempt to be specific and inclusive is evidence of sham.[1] I agree that the work of Plant Maintenance employees while at the Phillips plant was for the benefit of Phillips, but that fact is irrelevant to the issue of the existence of a special employment. All independent contractors, maintenance firms performing janitorial services for a third party or any other, benefit the recipient of those services. That is, exactly what they are paid for. Just as obviously, Plant Maintenance receives a benefit since it is by their work that Plant Maintenance fulfills its obligations. There is nothing suspect in the provision that any supervision by Phillips' foremen would be for the benefit of Plant Maintenance. Plant Maintenance had the obligation of furnishing supervision of its employees and, if Phillips undertook this work, it would relieve Plant Maintenance of a portion of its obligation. There could be a multitude of reasons why this arrangement might be the most economical or efficient. No evidence has been offered

---

[1]Provisions pertinent to this case read as follows:

"First: Except as otherwise specified, Contractor agrees to furnish all necessary labor, supervision, mechanics, materials, tools, implements and appliances, and to do and perform such maintenance jobs and work at Tidewater's Avon Refinery, Amorco Terminal, or Port Costa County, California (hereinafter designated as job site) as may be required by Tidewater from time to time under written orders as hereinafter specified. Contractor shall supply a minimum of fifteen (15) employees including supervisory and clerical personnel who shall be familiar with Tidewater's mechanical requirements and shall be immediately available to direct and assist any size crew that Tidewater may request in accordance with the provisions provided elsewhere in this agreement.

"Third: Contractor is not the agent of Tidewater but is and always shall be deemed an independent contractor, *maintaining complete control over Contractor's employees* and all subcontractors (if any), *notwithstanding that, as an aid to Contractor, some of said employees may work wholly or partially under the direction or supervision of Tidewater; it being agreed that any such direction or supervision by Tidewater shall be for Contractor's benefit* and account and shall in no way limit or affect Contractor's responsibility under this agreement. (Italics added.)

"Seventh: Contractor shall constantly superintend said work by its duly authorized superintendent, who shall be deemed for all purposes the representative of Contractor, and instructions or information given him shall be deemed to have been given Contractor. Additional supervisory personnel shall be furnished as requested by Tidewater.

"Ninth: Contractor agrees to protect Tidewater, its lands and other property, from and against all liens or claims of lien filed or made in connection with the work done hereunder, and agrees to cause any such lien which may be filed or made to be immediately released and discharged of record.

"Contractor agrees promptly to pay for all labor supplied or performed on said work and for all materials furnished in connection with said work, except materials furnished by Tidewater.

"Tenth: Contractor shall select, employ and carry *on its payroll, all labor and supervision of whatever kind required for the performance of the work; and all such employees shall be deemed to be the employees of Contractor for all purposes, notwithstanding any finding that their work is wholly or partially under the direction or supervision of Tidewater.*" (Italics added.)

that the parties' attempt to cover all contingencies was anything other than an effort to clarify their relationship, certainly a goal of most contracts.

The majority recognizes that a conclusion that Martin was a special employee of Phillips "cannot be squared with the terms of the contract" between Phillips and Plant Maintenance. The majority asserts, however, that the "true relationship" of the parties must establish their rights and duties, thus suggesting that the parties did not, in fact, adhere to the terms of their agreement. The only specific, however, to which the majority points to substantiate this assertion is the supervision and control of Plant Maintenance employees by Phillips.

The only evidence in the record on the subject of control and supervision is that, after receiving their initial work assignments from Plant Maintenance each day, the Plant Maintenance employees dispersed to their work around the Phillips plant and during the day received any further work directions from Phillips. There is no testimony as to just what or how much supervision was required. "The fact that instructions are given as to the result to be achieved does not require the conclusion that a special employment relationship exists." (*McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 704 [343 P.2d 923].) There is no evidence that Phillips instructed Plant Maintenance employees in the use of equipment or in the performance of their duties. Since Plant Maintenance personnel were in the business of maintenance work and Phillips was in the oil refinery business, it seems unlikely that Phillips gave instructions other than those which are "merely directions as to the result to be accomplished, such as are required in the nature of things to be given to independent contractors in any case." (*Umsted* v. *Scofield Eng. Const. Co.* (1928) 203 Cal. 224, 230 [263 P. 799]; see also *Miller* v. *Long Beach Oil Dev. Co.* (1959) 167 Cal.App.2d 546, 550 [334 P.2d 695].)

We cannot speculate, however, as to the extent or kind of supervision Phillips gave. Phillips had the burden of establishing that a relationship of special employment existed. They clearly did not do so by merely showing, without more detail, that they directed some of the work of Plant Maintenance personnel. The important factor in determining whether a special employment existed is the *right to control the employees' duties and activities*. The giving of instructions relative to details of what is to be accomplished is not determinative. In *Industrial Ind. Exch.* v. *Ind. Acc. Com.*, 26 Cal.2d 130 [156 P.2d 926], the court said: "The right to control and direct the activities of an alleged employee or the manner and method in which the work is performed, *whether exercised or not*, gives rise to the employment relationship." (Italics added.) (See also *McFarland* v. *Voorheis-Trindle Co., supra*, at p. 704.)

Furthermore, under the Plant Maintenance-Phillips agreement, Phillips was acting for Plant Maintenance when it furnished any of the supervision which was the obligation of Plant Maintenance. The contract provided with specificity for Plant Maintenance supervision and assistant supervisors and the amount of salary Plant Maintenance was to pay those supervisors. The parties recognized that where necessary or economical, Phillips might supervise work but any such supervision was to be for Plant Maintenance's benefit. By the terms of the contract, a legally enforceable duty was imposed upon Plant Maintenance to supervise, control and direct the activities of its employees on the Phillips premises.

If, despite its contract, Phillips can be held to be a special employer on the facts of this case, then I find it difficult to imagine any situation where the employees of an independent contractor would not also be the employees of the person contracting for their services.[2] Phillips had no voice in the hiring of Plant Maintenance employees; did not pay them; did not keep required employment records such as social security and withholding; did not provide unemployment insurance. Plant Maintenance employees were kept physically separate from Phillips employees—they wore distinctive badges, reported to a separate office, had separate washroom and locker facilities. Phillips had no right to discharge a Plant Maintenance employee. The fact that Phillips could get a man "out" if not satisfied with his work would be expected in any situation where the employees of an independent contractor are dispatched to work on the premises of another. Plant Maintenance could then simply have reassigned its employees to another oil company to which it assigned workers.[3]

---

[2] The majority of this court cite *Oxford* v. *Signal Gas & Oil Co.* (1970) 12 Cal. App.3d 403 [90 Cal.Rptr. 700], which shares a basic factual similarity to the case at hand. In the *Oxford* case, the court concluded that there was a dual employment relationship which rendered both companies liable under the Workmen's Compensation Act and excluded the injured employee from pursuing a claim for personal injuries against the special employer who, it was claimed, negligently caused the injury. The basic similarity consists of the fact that the injured worker in *Oxford* was the general employee of a company which furnished employees on a regular basis to an oil company. There is no evidence related in the opinion of physical separation of the employees or of the specificity of the contract in which the two companies defined the relationship of each with the furnished employees. In *Oxford* the contract made no provision for any possible supervision by the company contracting for the service of the employees. I consider it questionable that the oil company in *Oxford* established the existence of a special employment relationship as a matter of law. In any event, however, *Oxford* is not controlling. The question of special employment depends upon the facts peculiar to each case.

[3] If Phillips' management was dissatisfied with a worker, Phillips was required to report its complaint to Plant Maintenance's supervisor who then decided on the disposition of that employee, such disposition could result in either reassignment of that employee or dismissal. Employee grievances were processed by the terms of a union

Plant Maintenance furnished a fluctuating number of employees each day to Phillips, normally between 15 and 40, although the number could be raised "on a turnaround situation" to 200 or 300. The fact that appellant Martin had worked for Phillips for at least a year is not important in determining the relationship. That fact attests only to his satisfactory performance. Martin shares the same relationship with Phillips as did the other Plant Maintenance employees assigned to Phillips. The accident could as easily have happened to a man assigned for a single day to Phillips.

I conclude that Phillips did not carry its burden of demonstrating that it actually exercised the control and supervision of an employer over Plant Maintenance's employees, which, contrary to the terms of its contract, specifically did not give Phillips the right to exercise such control except when the supervision was "for Contractor's [Plant Maintenance] benefit."

In summary, I would hold that no special employment relationship existed between Martin and Phillips; therefore, Martin's rights as to workmen's compensation benefits as against Plant Maintenance and his personal injury claim against Phillips are both protected. Also, such conclusion preserves the right of Plant Maintenance and Phillips to enter into a contract, legal in both its contents and objectives, without infringement by courts or otherwise. I would reverse the judgment and remand the matter for trial for determination of the merits of Martin's claim for personal injuries.

Petitions for a rehearing were denied December 4, 1974. Brown (H. C.), J., was of the opinion that the petitions should be granted. The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied January 2, 1975. Mosk, J., was of the opinion that the petition should be granted.

---

bargaining agreement between Plant Maintenance, as the employer, and the union. Phillips had its own union contract for its employees which did not include the employees of Plant Maintenance.