[No. H003090. Sixth Dist. Aug. 27, 1987.]

SANTA CRUZ POULTRY, INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
DAVID C. STIER et al., Real Parties in Interest.

**COUNSEL**

Timothy J. Walsh and Grunsky, Pybrum, Ebey & Farrar for Petitioner.
No appearance for Respondent.

Paul B. Watkins, Goshkin, Pollatsek, Meredith & Lee, Lark A. Lucas, Robert J. Ricks and Glynn & Harvey for Real Parties in Interest.

## OPINION

AGLIANO, P. J.—A temporary employee furnished by Manpower, Inc., was injured on a one-day job assignment to the business Santa Cruz Poultry, Inc. The employee, Stier, sued Santa Cruz Poultry (SCP) for damages for his injuries, and SCP, by motion for summary judgment, asserted exclusivity of Stier's workers' compensation remedy. The trial court denied summary judgment, and SCP seeks statutory mandate under Code of Civil Procedure section 437c, subdivision (*l*). The issue is whether a temporary employee who finds work through the services of an agency such as Manpower, Inc., may bring a negligence action for industrial injuries received on the job against the employer to whom he is assigned, or whether he is relegated to a claim for workers' compensation under the provisions of Labor Code section 3601. We have concluded where the employer has supervision and control over the employee's job duties, as here, then the employee is in a special employment relationship with that employer. Under such circumstances the exclusive remedy for job-related injuries is workers' compensation. Accordingly we will issue a writ of mandate compelling summary judgment in favor of the employer, SCP.

### FACTS

David C. Stier and Citation Insurance Company (Citation) brought this negligence action against petitioner, Santa Cruz Poultry, Inc., Stier claiming damages for injuries sustained on the job while working as a temporary employee for SCP, and Citation claiming a lien for workers' compensation benefits paid to Stier as the compensation carrier for Manpower, Inc., the temporary labor agency which referred Stier to SCP. It is undisputed Stier received an industrial injury while temporarily employed by SCP on New Year's Eve, 1984, helping to deliver wholesale poultry products.

Stier's assignment was for one day only.

Stier was on Manpower's payroll and had the option of refusing any work assignment.

Stier was injured when attempting to jump onto a delivery truck belonging to SCP. He did so at the direction of its driver, an SCP employee who also supervised and controlled Stier's work. The trial court found as an

issue without controversy that SCP had the ability to control the result of Stier's work and the means by which it was accomplished, including the details relating to his job performance at the time of the injuries alleged.

Stier offered documents in which Manpower reminds its employees that it, and not the company they may be temporarily assigned to, is their employer. Instruction sheets given to Manpower employees encourage them to come to Manpower for assistance if a job is not going smoothly or if problems arise. It also emphasizes the employee's right to refuse an assignment. Stier also pointed to deposition testimony of Richard Johnson, president of SCP, who stated that SCP was not Stier's employer on the date of injury. He testified: " 'No. This was not our employee; this was a Manpower employee . . . . And we notified Manpower Services immediately that an injury to one of their employees had occurred. [¶] Well, I don't hire people from Manpower. I hire Manpower. They provide people for me. That is a clarification that must be made.' "

All parties have conceded Stier's injury was industrial. Manpower's compensation carrier, Citation, has paid benefits and seeks a lien in Stier's action against SCP.

## DISCUSSION

■■■ Although Stier has strongly emphasized the existence of his employment relationship with Manpower, that unquestionable relationship is not controlling in this situation. An employee may have more than one employer for purposes of workers' compensation, and, in situations of dual employers, the second or "special" employer may enjoy the same immunity from a common law negligence action on account of an industrial injury as does the first or "general" employer. Identifying and analyzing such situations "is one of the most ancient and complex questions of law in not only compensation but tort law." (1C Larson, Workmen's Compensation Law (1986 supp.) § 48.23, p. 19.)

Once a special employment relationship is identified, two consequences ensue: (1) the special employer's liability for workers' compensation coverage to the employee, and (2) the employer's immunity from a common law tort action, the latter consequence flowing from the exclusivity of the compensation remedy embodied in Labor Code section 3601. Larson sets out three factors generally regarded as determining whether the special employer is liable for workers' compensation: (a) whether the employee has made a contract of hire, express or implied, with the special employer; (b) whether the work being done is essentially that of the special employer; and (c)

whether the special employer has the right to control the details of the work. (1C Larson, Workmen's Compensation Law, § 48.00, p. 8-405.)

According to Larson, *supra,* in cases such as this where the general employer is a temporary employment agency like Manpower, Inc., and the business to which the employee is assigned has the right of supervision and direction of the employment duties, the typical result is to find the existence of a special employment relationship. "[E]mployers obtaining workers from the kind of labor service typified by Manpower, Inc. have usually, but not invariably, been held to assume the status of special employer." (1C Larson, Workmen's Compensation Law, § 48.23, pp. 8-488–8-489, fns. omitted.)

Further, Larson points out that this issue is properly a question of law. He cites recent decisions from various jurisdictions which imply the special employment relationship from the existence of control over the employee's job duties. Whether there is control may indeed be a question of fact, but if it exists, then the special relationship normally follows as a matter of law. (See discussion in 1C Larson, Workmen's Compensation Law, § 48.23, p. 8-470; *id.* (1986 supp.) p. 19; see such decisions as *Pettaway* v. *Mobile Paint Mfg. Co., Inc.* (Ala. 1985) 467 So.2d 228 [Manpower case]; *Nation* v. *Weiner* (1985) 145 Ariz. 414 [701 P.2d 1222]; *Whitehead* v. *Safway Steel Products* (1985) 304 Md. 67 [497 A.2d 803] [holding the issue is one of law].)

In accordance with these principles, the California Supreme Court decision in *Marsh* v. *Tilley Steel Co.* (1980) 26 Cal.3d 486, 492 [162 Cal.Rptr. 320, 606 P.2d 355], says, "The special employment relationship and its consequent imposition of liability upon the special employer [on the basis of respondeat superior] flows from the borrower's power to supervise the details of the employee's work." That case involved a "lent employee" situation. The decision treats the factor of control as primary in determining whether a new employment relationship arises. The primacy of control in determining respondeat superior liability is equally relevant, under the precedent discussed above, when applied to determining applicability of workers' compensation.

Here, the trial court denied summary judgment, although finding SCP had the right to control Stier's job performance, because the judge felt compelled to treat the existence of the special employment relationship as a question of fact under the California Supreme Court decision in *Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168 [151 Cal.Rptr. 671, 588 P.2d 811]. The *Kowalski* decision discusses language in Larson concerning the existence of the first requirement of a special employment relationship stated above, namely, whether there is a contract of hire with the employer. With respect to that requisite, Larson notes the employee's informed consent to such a

contract is required, because he gives up rights when he enters into a new employment relationship, specifically the right to sue the employer at common law for negligence, and therefore it is necessary to show deliberate, informed consent to establish the existence of the new relationship. (1C Larson, Workmen's Compensation Law, § 48.12, p. 8-409.) The *Kowalski* decision also states the necessity to find such consent. (*Kowalski* v. *Shell Oil Co., supra,* 23 Cal.3d 168, 178, fn. 10 and accompanying text.) However, we believe a careful analysis of the *Kowalski* decision reveals that decision is consistent with the general precedent discussed above which implies the special employment relationship as a matter of law from the existence of control.

In *Kowalski,* a jury found plaintiff not to be the special employee of defendant, on whose jobsite plaintiff had been working. The Supreme Court reversed a judgment notwithstanding the verdict for the defendant employer on facts showing defendant and his employees had no control over plaintiff's work, plaintiff was on the general employer's payroll, plaintiff was on a temporary assignment to defendant, the general employer furnished most of the tools and equipment used, defendant could not terminate plaintiff's employment, and plaintiff was unaware of a contract between the two employers purportedly establishing a special employment relationship. The facts showed Peterson, the general employer, and an independent contractor, entered into a maintenance contract with Shell Oil. Peterson provided its employees to do the work for Shell, including Kowalski who was injured on the jobsite. While performing the work Kowalski was under supervision and control of Peterson foremen. He was following express orders of a Peterson foreman when he was injured. (*Id.* at p. 173.) Shell employees never directed him or his crew members.

The court addressed the issue whether substantial evidence sustained the jury finding Kowalski was not Shell's special employee and concluded there was such evidence (requiring reversal of the judgment notwithstanding the verdict). The court found error in the trial court's reliance on the terms of the contract between Shell and Peterson, saying the actual nature of the employment situation, not the contract, controls. ■ The decision then cited the orthodox legal principle that the primary consideration in these matters is whether the special employer exercises control over the details of the employee's work. This is crucial to a finding of special employment relationship. (*Id.* at p. 176; see also *McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 705 [343 P.2d 923]; *Oxford* v. *Signal Oil & Gas Co.* (1970) 12 Cal.App.3d 403, 408 [90 Cal.Rptr. 700]; *Martin* v. *Phillips Petroleum Co.* (1974) 42 Cal.App.3d 916, 922 [117 Cal.Rptr. 269], all cited with approval on this point in *Kowalski, supra.*) Analyzed with respect to this controlling principle, the facts in *Kowalski* showed no support for conclud-

ing there was a special relationship, because of the absence of control of Shell over Kowalski; accordingly the decision properly concluded the jury verdict should have been sustained.

However, the decision then goes on to discuss the consideration whether the worker consented to the employment relationship. Here, the decision cites the language referred to above from *Larson, supra,* which precisely quoted says, " 'If this question [consent] cannot be answered "yes," the investigation is closed, and there is no need to go on into the tests of relative control and the like. [¶] This must necessarily be so, since the employee loses certain rights along with those he gains when he strikes up a new employment relation. Most important of all, he loses the right to sue the special employer . . . and when the question has been presented in this form, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.' " (1A Larson, Workmen's Compensation Law, § 48.10, pages 8-205–8-206, quoted in *Kowalski, supra,* 23 Cal.3d 168, 178, fn. 10.)

The *Kowalski* opinion then goes on to state that since Kowalski was not aware of the contract between Shell and Peterson he was not bound by it.

This part of the discussion in *Kowalski,* in addition to being unnecessary to the result which had already been premised on the existence of control, flowed from the principle that the contract between the two employers, Peterson and Shell Oil, could not control the parties' status; rather, the actualities of the situation were determinative. That proposition is also stated in *Martin* v. *Phillips Petroleum Co., supra,* pointing out the reality of the employment relationship, not the parties' paper agreement, controls the parties' rights. Thus *Kowalski* cites with approval language in *Martin* that the worker's consent to the employment relationship may be express or implied.[1] (*Kowalski, supra,* at p. 178, quoting *Martin, supra,* 42 Cal.App.3d at p. 920.) Clearly both *Kowalski* and *Martin,* in accordance with the general law discussed above, hold the employment relationship itself may be implied in a suitable case from the factual nature of the parties' relationship. ■ Here, the existence of SCP's control over Stier's job performance implies, as a matter of law, the employment relationship between them. Larson's discussion of the dual employment situation also reaches this result; he points out consent to the special employment rela-

[1] On the relevance of the employer's power to discharge the employee, *Kowalski* parts company with *Martin.* The decision says the power of the alleged special employer to terminate the special employment relationship is not determinative, since that power will always be present. (See *Kowalski, supra,* 23 Cal.3d at pp. 177-178, fn. 9.) *Kowalski* disapproves both *Martin, supra,* and *Oxford, supra,* to the extent they conflict with this principle.

tionship is normally implied, by the weight of authority, from acceptance of the special employer's control. (1C Larson, Workmen's Compensation Law, § 48.15, p. 8-428 et seq.)

Larson cites, among other cases, a California decision, *Thomas* v. *Edgington Oil Co.* (1977) 73 Cal.App.3d 61 [140 Cal.Rptr. 635], remarkably like the one at bench, where summary judgment was granted the employer on the basis of workers' compensation exclusivity, and the facts showed plaintiff was a temporary employee on assignment to defendant Edgington and engaged as a laborer on Edgington's premises under the control and supervision of its employees. As a matter of law, premised on the right of control and supervision, Edgington was held to be a special employer of the plaintiff, preventing a common law action. "[W]here, as here, the alleged special employer was, by the admission of plaintiff, exercising direct supervision over the exact task during the accomplishment of which an employee is injured, the status of special employer must be found to exist as to a claim for that injury." (*Id.,* at p. 64.) The case does not discuss, nor even mention, the question of "consent" to the relationship. Although the *Kowalski* decision discusses much of the precedent on this issue, it does not mention, much less attempt to distinguish or overrule, the *Thomas* decision.

After discussing the general proposition that the special employment relationship may be implied from the control and supervision over the employee, Larson goes on to consider problems presented when, as here, the general employer is in the business of furnishing temporary help. As he points out, these are the closest cases. (1C Larson, Workmen's Compensation Law, Lent Employes, § 48.23, p. 8-458 et seq.) However, when the general employer (here, Manpower) merely arranges for labor and does not provide equipment, the majority of decisions hold the worker is a special employee. (*Id*. at p. 8-476, and cases cited at fn. 65.) Among others, he cites the California decisions in *Martin, supra,* 42 Cal.App.3d 916, and in *Oxford* v. *Signal Oil & Gas Co., supra,* 42 Cal.App.3d 403. *Oxford* was a case where the general employer was in the business of furnishing labor for the oil industry and sent the employee to Signal where he was under supervision and control of the latter's employees; held he was a special employee of Signal and could not sue in tort for an injury at work. *Martin* involved a plaintiff injured in a locker room when the lockers fell on him; he was an employee of plant maintenance which was in the business of supplying manpower to oil refineries and other industries. While working at a Phillips Petroleum refinery he was injured. He had been on the assignment more than one year. Although a contract between the two employers said Phillips was not the employer, the court found a special employment relationship existed, citing these factors as relevant: (1) length of work for Phillips; (2) the work was unskilled and subject to Phillips Petroleum's control; (3) tools

were supplied by Phillips; (4) the right to terminate the special relationship was held by Phillips; (5) all control and supervision was by Phillips Petroleum foremen.

The result in *Martin* and in *Oxford* is typical of the authority in cases where the general employer is a temporary employment agency like Manpower here.

In the situation we deal with, whatever the employee's intentions, if any, regarding the nature of his legal status vis-à-vis SCP, in fact he worked under the supervision and control and at the pleasure of SCP, exactly like any employee of SCP. Further, again regardless of his intention, he was covered by workers' compensation for an obviously industrial injury and received benefits. No rational reason countenances a result by which he may reap the benefits of a common law negligence action against SCP when none of SCP's regular employees could do so. Further, the employee here has received the quid pro quo—workers' compensation coverage with attendant quick recovery and simplified procedures—which justifies loss of the right to bring a tort case. The employee here as a matter of law is deemed to have made the bargain whereby tort recovery is traded for workers' compensation recovery. The fact he has not one, but two, employers is irrelevant; the exclusivity here of compensation rests on the unmistakable existence of an employment relationship. From the weight of authority, we must infer, from the employee's submission to an employment situation where he is controlled and directed by the special employer, his "consent" to the status of a special employee, covered by compensation as his exclusive remedy for any on-the-job injury.

■ In determining whether an employee is covered within the compensation system and thus entitled to recover compensation benefits, the "definitional reach of these covered employment relationships is very broad." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 728 [199 Cal.Rptr. 697].) A covered employee is "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ." (Lab. Code, § 3351.) "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." (Lab. Code, § 3357.) As concluded in *In-Home Supportive Services,* and other decisions, these provisions mandate a broad and generous interpretation in favor of inclusion in the system. Necessarily the other side of that coin is a presumption against the availability of a tort action where an employment relation exists. One result cannot exist without the other. Further, this result does not depend upon "informed consent," but rather on the parties' legal status. As said in *In-Home*

*Supportive Services, supra,* where the facts of employment are not disputed, the existence of a covered relationship is a question of law. (152 Cal.App.3d at p. 729; *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 783 [100 Cal.Rptr. 377, 494 P.2d 1].)

■ Since here the trial court has found supervision and control it follows that the special employment relationship also exists between SCP and Stier, rendering the former immune to this negligence action. Similarly, since no action may be maintained, Citation has no rights against SCP either. (We need not determine what rights, if any, it may have as against SCP's compensation carrier; see Ins. Code, § 11663, making the insurer of the general employer the primary insurer when the employee is on the general employer's payroll.) It follows summary judgment should have been entered in SCP's favor.

### DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Superior Court of Santa Cruz County to vacate its order denying summary judgment and instead to enter summary judgment in favor of petitioner Santa Cruz Poultry, Inc.

Brauer, J., and Capaccioli, J., concurred.